**BLACK MUSICIANS OF PITTSBURGH
and George Childress et al.,
Plaintiffs,**

v.

**LOCAL 60–471, AMERICAN FEDERA-
TION OF MUSICIANS, AFL–CIO, and
American Federation of Musicians,
AFL–CIO, Defendants.**

**BLACK MUSICIANS OF PITTSBURGH
and George Childress et al.,
Plaintiffs,**

v.

**Joseph SCHAEFER et al., Defendants.**

**Civ. A. Nos. 71–1008, 72–787.**

United States District Court,
W. D. Pennsylvania.

May 8, 1974.

Stanton Levenson, Watzman, Levenson & Snyder, Pittsburgh, Pa., and William Gould, Stanford, California for plaintiffs.

Robert N. Hackett, Harold Gondelman, John L. Doherty, Pittsburgh, Pa., William A. Meyer, Jr., Meyer, Unkovic & Scott, Greenfield & Minsky, Pittsburgh, Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

■ We have before us motions to dismiss [1] two civil rights actions alleg-

ing race discrimination which have been brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") ; 42 U.S.C. § 1981;[2] and various sections of the National Labor Relations Act and Labor Management Relations Act.

The first action, C.A. 71–1008, was brought by Black Musicians of Pittsburgh[3] and six named individuals who are also members of the defendant union—Local 60–471, American Federation of Musicians and American Federation of Musicians, AFL–CIO.

The second suit, C.A. 72–787, was brought by the same plaintiffs against six persons alleged to be Pittsburgh bandleaders who employ musicians.[4]

Both suits allege that the defendants maintain or participate in racially discriminatory hiring or referral policies. The suit against the union alleges, in addition, that the union discriminates against Blacks because of its refusal to extend a 5 year agreement under which the formerly all Black and formerly White locals were merged. The agreement, which has expired according to its terms, assured the Black members a certain number of union leadership positions.

## I

## TITLE VII ACTIONS

### A. *Procedural Background*

The procedural background of this litigation is somewhat complex, but it must be set out in detail because procedural irregularities lie at the heart of the defendants' motions to dismiss.

1. In deciding the motions to dismiss the Title VII counts we have considered matters outside of the pleadings. Therefore, as provided in Fed.R.Civ.P. 12(c), we have treated them as motions for summary judgment.

2. No motions have been filed to dismiss the counts of the two suits brought under § 1981.

3. Black Musicians of Pittsburgh is identified in the complaint as "an organization open to all Pittsburgh musicians who are members of Local 60–471, American Federation of Musicians, AFL–CIO, without regard to race, color, nationality or creed." Its primary purpose is to "remedy racial discriminatory practices engaged in by Defendants." It has an executed Articles of Association.

4. The "bandleaders" are also interchangeably referred to as "contractors."

The plaintiffs filed their suit against the union on October 21, 1971. The complaint alleges that the Black union members are racially discriminated against in holding positions of union leadership and in union job referral practices. It alleges claims under Title VII, The National Labor Relations Act, Labor Management Relations Act, and 42 U.S.C. § 1981. At the time the suit was filed the plaintiffs had filed no charge with the Equal Employment Opportunity Commission ("EEOC").

On December 13, 1971, George Childress, on behalf of Black Musicians of Pittsburgh, filed a charge with the EEOC against Local 60–471. The charge alleged racial discrimination regarding positions of union leadership and union job referral policies.[5] The EEOC designated the case as number TPI–1134.

On January 10, 1972, the charge was deferred to the Pennsylvania Human Relations Commission ("PHRC") as required by § 706(b) of Title VII.[6] The PHRC acceded to the EEOC's request, according to the EEOC letter to Childress (see footnote 6), terminated its proceeding, and returned the charge to the jurisdiction of the EEOC. The letter to Childress was written in reference to case number TPI–0333.

On March 29, 1972, Childress and the Pittsburgh Black Musicians filed another charge with the EEOC. In response to the question on the form complaint "Who discriminated against you?" appears the answer "See attached list." The attached list is captioned "Amended Charge of Discrimination" and lists bandleaders Schaefer, Pasquarelli, Lomakin, Simms, Marone, and Purcell as well as Local 60–471 and the international union. The question "Have you filed this charge with a state or local government agency?" was unanswered. The substance of the charge concerns alleged discriminatory hiring and payment practices of the charged parties.[7] The charge was given the case file number TPI–2–0333.

On September 7, 1972, the EEOC issued a right to sue letter on case number TPI–2–0333.

On September 18, 1972, the EEOC wrote to the union's attorney setting a conciliation meeting for September 22. The letter was in reference to case number TPI–2–0333, and referred to "an amended charge which involved additional parties in the action. . . ."

On September 22, 1972, the plaintiffs filed a complaint in this court against the six bandleaders (C.A. 72–787). The international union and Local 60–471 were not named as defendants. The complaint alleged that the defendants racially discriminated against the plaintiffs in their hiring policies.

On January 16, 1973, the EEOC issued a decision in case YPI 3–020 naming Childress and Black Musicians of Pittsburgh as the charging parties and

---

5. The text of the charge is as follows:
 "Prior to 1966 there were separate Black and White Musicians Unions in the City of Pittsburgh. In 1966 these Unions were merged, and pursuant to the merger agreement the Blacks were given a certain number of leadership positions. Since the expiration of the merger agreement, Blacks have been unable to obtain any positions of leadership within the merged Union. In addition, the Union has discriminated against the Blacks in the terms of jobs and job opportunities. When requests are made to the Union for Musicians, the requesting parties are always referred to White Musicians."

6. This is according to a letter dated February 4, 1972, written to Childress by the EEOC. Copies of the letter were attached

to the briefs of both the union and the plaintiffs.

7. Text of the charge is as follows:
 "I am a member of the Pittsburgh Black Musicians and, along with all other black musicians—members of Local 60–471, American Federation of Musicians have been discriminated against on the basis of race because of discriminatory hiring practices of the above-mentioned parties, the above-mentioned parties employ musicians in the City of Pittsburgh at the highest wage rate and none of the above-mentioned parties employ more than a few "token" blacks at any time. White members of Local 60–471 are treated differently because they are hired for such jobs."

as respondents the international union, Local 60–471, and six bandleaders (Schaefer, Pasquarelli, Lomakin, Simms, Marone and Purcell). It discussed alleged discrimination in hiring, job referrals and union leadership. The EEOC's decision concluded that there was reasonable cause to believe all the respondents were engaged in unlawful employment practices in violation of Title VII.

We must first deal with the apparent inconsistencies in the case numbers which the EEOC has attached to this case during its various administrative stages.

The initial charge filed with the EEOC was designated as TPI–1134. In February, 1972, in a letter to Childress, the EEOC referred to the charge as TPI–0333. When the second charge was filed in March, 1972, it was designated TPI–2–0333. The right to sue letter referred to case TPI–2–0333. And the reasonable cause decision of January, 1973, referred to case number YPI 3–020.

■ While there is probably a rational explanation for this apparently random assignment of numbers, it does not appear of record. The facts indicate, however, that these differing numbers all identify the same case: There is an internal consistency in the letters between the EEOC and the litigants; the second charge was labeled "amended charge"; and the reasonable cause decision (albeit by another number) considered issues raised in both charges. These facts lead to the conclusion that the EEOC treated both charges as one. It follows, then, that the right to sue letter applied to both of the charges filed by Childress, and authorized suit against the local and international union as well as the six bandleaders.

## B. *Union's Motion to Dismiss the Title VII Count in 71–1008*

The union has moved to dismiss the Title VII count (Count I) in the complaint against it because the plaintiffs failed to file suit against it within 90 days after the issuance of the right to sue letter as required by the statute.

The union's position may be technically correct. We cannot close our eyes to the realities of the litigation, however. The plaintiffs first filed suit against the union; then they filed a charge with the EEOC and exhausted all administrative remedies; a right to sue letter issued; and more than 90 days after issuance of the letter the union filed a motion to dismiss because they had not been sued within the 90 day period required by the statute.

■ Title VII states that "within ninety days after the giving of such notice (a right to sue letter) a civil action may be brought against the respondent named in the charge. . . ." 42 U. S.C. § 2000e–5(f)(1).[8] Although Congress amended the statute in 1972 to enlarge the time in which suit must be brought from 30 to 90 days, there is no question that the 90-day limit (like the old 30-day limit) is a jurisdictional requirement. A suit not brought within the statutory period is barred. McDonnell Douglas Corp. v. Green, 411 U. S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Goodman v. City Products Corp., Ben Franklin Div., 425 F.2d 702 (6th Cir. 1970); Henderson v. Eastern Freight Ways, 460 F.2d 258 (4th Cir. 1972). See cases collected at 4 A.L.R. Fed. 833, § 12(a).

■ Here, however, the suit was brought *before* the issuance of the right to sue letter, even before the filing of

8. The 1972 amendments to Title VII took effect during the pendency of the proceedings now in issue. The amendments changed various time limits in the statute and renumbered some sections, but the administrative and procedural scheme remained essentially the same.

Whether or not the amendments apply to the instant litigation has not been an issue and the question would not affect the outcome of this opinion one way or the other. Therefore, to simplify matters, we have referred in this opinion to the sections of the statute as they were renumbered by the 1972 amendments.

the charge with the EEOC. Asserting one's rights too late is quite a different matter from asserting them too soon. Henderson v. Eastern Freight Ways, *supra*. This suit was not proper when it was filed and obviously would have been dismissed had the union moved to do so. But the issuance of the right to sue letter, in effect, validated the pending suit making it unnecessary to file another suit. Under the circumstances, we do not think a dismissal of the complaint at this stage would fulfill the purposes of the Act. The administrative proceedings which the Act· mandates have already been exhausted. The EEOC considered evidence submitted to it and made a reasonable cause finding. Conciliation and negotiation have been attempted and have failed. If we dismissed the complaint, the plaintiffs will, they have told us, file another charge with the EEOC contesting the same union practices. When that happens there will be little the EEOC can do that it has not done already.

We will, therefore, deny the union's motion to dismiss. We will grant the plaintiff's motion requesting permission to amend their complaint to allege the issuance of the right to sue letter.[9]

By denying the defendant's motion we do not decide that the plaintiffs followed a proper and correct procedure in filing the complaint here before exhausting their remedies with the EEOC.

The plaintiffs contend, as we understood their oral argument, that Young v. ITT, 438 F.2d 757 (3rd Cir. 1971) "invites" the filing of a Title VII action joined with a § 1981 action *before* a charge has been filed with the EEOC. That is not what *Young* held. *Young* held that Title VII does not pre-empt § 1981 and that a plaintiff need not exhaust Title VII administrative remedies before filing a § 1981 suit in federal court. We do not read *Young* to hold that a Title VII suit may be started be-

fore filing a charge with the EEOC and receiving a right to sue letter; nor do we see how it could possibly be so construed in light of the explicit statutory scheme. Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968); Oatis v. Crown Zellerbach, 398 F.2d 496 (5th Cir. 1968); Stebbins v. Nationwide Mutual Ins. Co., 382 F.2d 267 (4th Cir. 1967).

### C. *Bandleaders' motion to dismiss the Title VII Count in 72–787*

We turn now to issues raised in the motions to dismiss Count I filed by the defendant bandleaders in C.A. 72–787.

The defendants first move to dismiss for lack of subject matter jurisdiction contending they are not "employers" as defined in § 2000e, and the Act, therefore, does not apply to them.

The Act defines "employer" as follows:

> "(b) The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers."

Each of the defendants contends that he has not employed 25 or more em-

---

9. A copy of the motion was sent to the court and counsel, but the motion was not sent to the Clerk of Court for filing as required by

Local Rule 4. We will order the motion filed.

ployees for each working day during 20 or more calendar weeks during the years 1971 and 1972.[10] Defendants Simms, Schaefer, Pasquarelli and Purcell have filed affidavits to support their position.

The plaintiffs contend that the defendants' position is meritless in light of the EEOC reasonable cause decision which made a finding that the bandleaders were "employers" for purposes of the Act.

The decision states:

*"Hiring Allegation*

Charging Parties have charged Respondent Contractors with hiring discrimination. A threshold question is whether the Contractors are subject to the Commission's jurisdiction, since few if any of them regularly employ twenty-five or more employees. But Section 703(b) defines "employer" as including "any agent" of a person having twenty-five or more employees. The standard engagement contract between the Contractors and management of establishments designates the latter as the "employer" and the former as employer's "agent," both for the hiring of the musicians and their subsequent supervision. It is clear from the record that several of the establishments with which the Contractors deal regularly employ in excess of twenty-five employees. We conclude, therefore, that Respondent Contractors are themselves employers within the meaning of Section 701(b).[3]

3. Respondent Contractors also qualify for joint-employer status, for reasons stated in Commission Decision No. 71–2088, CCH Employment Practices Guide 6250 (1971); and given the hiring-agent provision of the contracts, as employment agencies. See Section 701(c)."

■ An EEOC reasonable cause decision is not binding on the court. *Fekete v. U. S. Steel Corporation,* 424 F.2d 331 (3rd Cir. 1970). We think at this stage of the proceedings, however,

that we should not lightly discard the EEOC's conclusion and rule as a matter of law that the bandleaders are not "employers." The evidence in the record on the point is spare, to say the least. We have not seen the "standard engagement contract" to which the EEOC decision refers, nor do we have any evidence of record to support the EEOC's conclusion that the establishments with which the bandleaders deal regularly employ over 25 persons. We also lack evidence on which to evaluate the EEOC's and plaintiffs' argument that the bandleaders should be considered joint-employers.[11]

By denying the defendant's motion to dismiss on this point we intimate no position on whether or not they are "employers." That decision will be made at the proper time when the record is more complete.

The bandleaders next contend that the plaintiffs did not receive a valid right to sue letter before filing suit.

The defendants argue that while the first EEOC charge was deferred to the appropriate state agency, the second charge filed by Childress on March 29, 1972, was not. It follows, they argue, that since there was no deferral of the charge as required by § 2000e–5(c), the right to sue letter is invalid because the EEOC had no right to issue the letter until the appropriate deferral had been made.

■ The Act requires that when an unlawful employment practice occurs in a state which has a "State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a state or local authority to grant or seek relief from such practice . . . no charge may be filed (with the EEOC) . . . before the expiration of sixty days after proceedings have been commenced under State or local law. . . ." § 2000e–5(c). Compliance with this provision is a jurisdictional prerequisite to a suit in district court.

10. The suit was filed in 1972.

11. To support this proposition plaintiffs rely on Williams v. New Orleans Steamship Association, 341 F.Supp. 613 (E.D.La.1972).

Electrical Workers Local 5 v. EEOC, 398 F.2d 248 (3rd Cir. 1969); cf. Goger v. H. K. Porter Company, Inc., 492 F.2d 13 (3rd Cir. 1974).

█ We think that under the circumstances at bar the deferral requirement has been satisfied.

There is evidence of record that the initial charge filed by Childress against the union local was deferred to the Pennsylvania Human Relations Commission on January 10, 1972. As mentioned earlier, the PHRC terminated its proceedings at the request of the EEOC and returned the charge to the EEOC's jurisdiction. The charge was evidently returned to the EEOC before February 4, 1972, which was the date the EEOC wrote to Childress to inquire whether he wanted the Commission to investigate his charge.

On March 29, 1972, Childress filed the second charge. For reasons discussed earlier it is apparent that the EEOC treated the second charge as an amendment to the first. The EEOC regulations in effect at the time expressly stated that a charge could be amended.[12] The regulation stated, however, that an amendment is not proper if it alleges "additional facts . . . not directly related to or growing out of the . . . original charge . . . where . . . the allegation could have been timely filed as a separate charge." While arguably the amendment could have been filed as a second charge we do not think it necessarily was required.[13] The amendment did allege additional facts but the new allegations were adequately related to the initial charge, in our view, so that it properly could have been considered by the EEOC to be an amendment.

Assuming, then, that the EEOC was correct in treating the second charge as an amendment to the first, the question becomes whether the Act requires that the charge as amended be deferred to the state agency. On these facts we do not think it was necessary because it would have served no real purpose.

If the second charge had not been treated as an amendment obviously the proper procedure under the statute would have been to defer it to the PHRC. But, by definition, an amendment to a charge cannot change the substance of the charge. Therefore, once the PHRC terminated its jurisdiction over substantially the same employment complaint we see no reason why deferral should have been made again. We hold that under these facts the policy of deferral to state agencies has been sufficiently satisfied to meet the jurisdictional prerequisites.

The defendant bandleaders' motion to dismiss Count I will be denied.

## II

### DUTY OF FAIR REPRESENTATION

The plaintiffs have brought a count (Count III) in each suit under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. They contend that there has been a breach of the duty of fair representation owed to them. They also allege in their complaint violations of other sections of the labor laws involving unfair labor practices, but all briefs and arguments have dealt only with the issue of fair representation.

The union and the bandleaders have moved to dismiss the complaint for lack of jurisdiction.

█ A suit alleging a violation of the duty of fair representation may properly be maintained in federal court under § 301, Vaca v. Sipes, 386 U.S. 171, 87 S.

---

12. 29 C.F.R. § 1601.11 (1970). The regulation was liberalized by an amendment effective May 6, 1972. See 29 C.F.R. § 1601.-11(b) (1972).

13. As the court pointed out in King v. Georgia Power Co., 295 F.Supp. 943, 947 (N.D. Ga.1968), the complainant may not realize "the full panoply of discrimination which he may have suffered." In light of that observation we think the complainant must be given a reasonably liberal opportunity to amend his charge. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).

Ct. 903, 17 L.Ed.2d 842 (1967). Jurisdiction over such a claim is not preempted by the NLRB; nor is the court's jurisdiction pre-empted by the NLRB because the alleged violation of the duty may also involve unfair labor practices which are normally within the sole province of the NLRB. Vaca v. Sipes, *supra.* If there is no § 301 jurisdiction, however, we have no jurisdiction to hear related allegations that the defendants committed unfair labor practices.

We must determine, first, whether the complaints allege facts which state a violation of the duty of fair representation so as to give this court jurisdiction under § 301. If they do not we need not reach the question of possible other violations of the labor law since jurisdiction would be in the NLRB.

A union's duty of fair representation is a concept well established in the law. It might be advisable to restate what the duty is, however, because the plaintiffs' apparent concept of the scope of fair representation is not consistent with our understanding of the law.

 The duty of fair representation is a judicially developed concept designed to protect individual union members from abuses by unions in the negotiation or administration of collective bargaining agreements. Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). It is premised on the theory that since the union is the statutory exclusive bargaining representative of the employees, it has a corresponding statutory duty to fairly represent all those employees in its collective bargaining with the employer and in its enforcement and administration of the resulting contract. Vaca v. Sipes, *supra*; Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). "Fair" representation means the union must "serve the in-

terests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, *supra*, at 177; Humphrey v. Moore, 375 U.S. 335, at 342, 84 S.Ct. 363, at 368, 11 L.Ed.2d 370.

 Plaintiffs apparently read *Vaca* and related cases to say that the duty of fair representation extends to any action a union takes toward its members which the members consider to be in derrogation of their rights. We do not think the duty is that broad. The duty does not reach, into and control all aspects of the union's relationship with its members. The duty extends only to negotiating, administering or enforcing a collective bargaining agreement.

 In order to bring § 301 action, a plaintiff must allege facts which disclose that there is a dispute involving a collective bargaining agreement.[14] According to the statute the complaint must allege a violation of the contract between an employer and a labor organization representing employees or between any such labor organizations. Where the duty of fair representation is involved the law is clear that in order to bring a § 301 action an employee need not necessarily allege a violation of a collective bargaining agreement. A plaintiff may allege, instead, that the union and employer have negotiated a contract which discriminates on the basis of race. Steel v. Louisville & Nashville R. Co., *supra*; Humphrey v. Moore, *supra*. Or he may allege that a contract neutral on its face is being administered by the union in a discriminatory manner. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In sum, in order to maintain a § 301 action for the violation of the duty of fair representation the plaintiff must al-

---

14. § 185 "Suits by and against labor organization—Venue amount, and citizenship

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter,

or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. . . ."

lege that he was not fairly represented in the negotiation, enforcement or administration of a collective bargaining agreement.[15] While it is true that the courts strain to find a violation of the collective bargaining agreement,[16] nevertheless there must at least be a colorable argument that a collective bargaining agreement is somehow involved.[17]

Here the plaintiffs have made no allegations concerning the negotiation, enforcement or administration of a collective bargaining agreement and for that reason the suit must fall because they have not alleged facts which give this court jurisdiction under § 301.

The relevant allegations in the complaint against the union are as follows:

"A. 1. Defendants have continuously through policies, practices, customs and usage, discriminated against black citizens, including Plaintiffs and members of this Class, with respect to employment, compensation, terms and conditions of employment, membership, due to race and/or color, through the utilization of hiring practices, segregated locals, the exclusion of black citizens from union office in Defendant organizations, standards, and procedures both prior to and subsequent to January 1, 1966.

"2. Defendants, on or about February [sic] and February 23, 1971, and continuously thereafter, have refused to extend a merger agreement, effective January 1, 1966, between Local 60, American Federation of Musicians, AFL-CIO, which local was until such date all white and excluded blacks from membership, and Local 471, which prior to said date was all blacks, but which was open to whites. "Said agreement allocated executive board seats in the merged local 60-471 to both black members of 471 and white members of 60.

"3. Defendants, prior to their refusal to extend such agreement on or about February 4 and February 23, breached said agreement by refusing to appoint black delegates to the American Federation of Musicians as provided for in Paragraph 7 on page 2 of said Agreement. (The Agreement is attached hereto as Exhibit "A".)

"4. Defendants have at all times refused to police and administer said Agreement.

"5. Defendants' discrimination against Plaintiffs and other members of said Class effectively excludes blacks from employment and membership opportunities and results in inferior compensation, terms, and conditions of employment being given to blacks due to race or color.

"6. Defendants have discriminated against Plaintiffs inasmuch as blacks have been excluded from leadership positions in Local 60-471 since December, 1969.

"7. Defendants have failed to publicize employment opportunities for black musicians in the Pittsburgh black community and the Pittsburgh area black media and have established a reputation in the black community for discriminating against individuals in employment because of race or color.

15. The failure to negotiate an agreement ending discrimination, or even the failure to negotiate an agreement at all, might violate a union's duty of fair representation. See, Comments: The Duty of Fair Representation, 20 Catholic U.L.R. 271 (1970). Rubber Workers, Local 12 v. NLRB, 368 F.2d 12 (5th Cir. 1966), cert. denied, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967). The plaintiffs have not alleged in their complaint that the defendants have failed to negotiate an agreement; nor have they briefed the theory. While such a theory might, perhaps, have some merit it must be alleged specifically and the court need not read between the lines to find it. Balowski v. International U., United A., A. & A. Imp. Wks., 372 F.2d 829 (6th Cir. 1967). Hubicki v. ACF Industries, Inc., 484 F.2d 519 (3rd Cir. 1973).

16. See Justice Goldberg's concurring opinion in Humphrey v. Moore, supra.

17. We make no decision, of course, whether the allegations state other violations of labor laws. As discussed before, plaintiffs' briefs make it clear that their only theory is violation of the duty of fair representation.

"8. Due to Defendants' discrimination against individuals with respect to employment and compensation membership, terms, conditions or privileges of employment because of race or color, Pittsburgh area black musicians increasingly refuse to assume membership obligations in said Defendants.

"B. Defendants, through the above-mentioned practices, have denied Plaintiffs both employment and membership opportunities both prior to and subsequent to January 1, 1966.

. . . in violation of 29 U.S.C.A. 151, 159, and 185."

The relevant allegations in the complaint against the bandleaders are as follows:

"1. The Defendants have continuously through policies, practices, customs and usage, discriminated against black citizens, including Plaintiffs and members of this Class, with respect to employment, compensation and terms and conditions of employment, due to race and/or color through the utilization of employment and hiring practices.

"2. The Defendants' discrimination against Plaintiffs and other members of said Class effectively excludes blacks from employment opportunities and results in inferior compensation, terms and conditions of employment being given to blacks due to race and/or color.

"3. The defendants have consistently refused to hire blacks for musical engagements.

"4. The number of blacks employed by the Defendants is severely disproportionate to the number of blacks residing in the area.

. . . in violation of 29 U.S.C.A. §§ 151, 157, 158, 159, and 185."

On the basis of the complaints we do not know whether a contract is in any way involved in these disputes.[18] Neither complaint, therefore, alleges facts which give us jurisdiction under § 301. Even under the most liberal construction of the complaints the missing link is still missing. We do not mean that a plaintiff must say the "magic words" to open the courthouse doors; but neither can we fill the holes in the plaintiffs' complaints with assumptions. When complaints fail to allege facts which support federal jurisdiction they must be dismissed.

18. We are assuming *arguendo* that a suit for breach of the duty of fair representation may be independently maintained against the bandleaders. But there is some confusion in the cases over whether a § 301 action for breach of the duty is actually brought against the employer, or whether the employer is merely joined, perhaps as an indispensable party, in a suit against the union brought by union members. The liability of the employer, in other words, may be derivitive rather than direct. See Humphrey v. Moore, *supra*, where Mr. Justice Goldberg states in a concurring opinion that "The remedy in a suit based upon a breach of the union's duty of fair representation may be extended to the employer under appropriate circumstances." 375 U.S., at 356. See also Central of Georgia Railway Company v. Jones, 229 F.2d 648 (5th Cir. 1956) where the court, over the vigorous dissent of Judge Brown, issued an injunction against the employer as well as the union. Professor Cox has observed that Judge Brown "was on sound ground in objecting to the order against the carrier. The only legal analysis which appears to be available to sustain the decree, however much one may applaud its social and economic consequences, is the doctrine that equity may impose more far-reaching restraints than the substantive law in order to redress past wrongs and prevent future infractions." Cox, The Duty of Fair Representation, 2 Vill.L.R. 151 (1957).