William J. BEVERLY, Plaintiff-Appellant,

v.

**LONE STAR LEAD CONSTRUCTION CORPORATION, Defendant-Appellee.**

No. 29620.

United States Court of Appeals, Fifth Circuit.

Jan. 19, 1971.

William W. Kilgarlin, Gabrielle K. McDonald, Houston, Tex., Vilma M. Singer, William L. Robinson, Jack Greenberg, Norman C. Amaker, New York City, for plaintiff-appellant.

Frank J. Knapp, Thomas R. Beech, Butler, Binion, Rice, Cook & Knapp Houston, Tex., for defendant-appellee.

Stanley P. Hebert, Gen. Counsel, Russell Specter, Deputy Gen. Counsel, Julia P. Cooper, G. Maxine Bethel, Attys., Equal Employment Opportunity Commission, Washington, D. C., amicus curiae.

Before GEWIN, MORGAN and ADAMS,* Circuit Judges.

GEWIN, Circuit Judge:

This case is among the first in another round of litigation growing out of the apparent inability of the Equal Employment Opportunity Commission (EEOC) to cope with the volume of complaints before it. It has already been determined by the overwhelming weight of authority that under Title VII of the Civil Rights Act of 1964,[1] the Commission may not defeat jurisdiction of the federal courts in a civil suit under Title VII by (1) a statement that it has been unable to determine whether reasonable cause exists to believe that there has been a violation of the Act,[2] or (2) a failure to attempt to achieve voluntary compliance with the anti-discriminatory provisions of the Act.[3] We are here called upon to decide whether an actual finding, that there is "no reasonable cause" to believe that a violation of Title VII has occurred, will defeat jurisdiction.[4]

---

* Of the Third Circuit, sitting by designation.

1. 42 U.S.C.A. § 2000e et seq.

2. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969). Accord: Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970); Noon v. Kaiser Steel Corp., 60 L.C. ¶ 9313 (C.D.Calif. 1969); Holliday v. Railway Express Co., 306 F.Supp. 898 (N.D.Ga.1969); McDonald v. American Federation of Musicians, 308 F.Supp. 664 (N.D.Ill.1970). Contra, Green v. McDonnell-Douglas Corp., 299 F.Supp. 1100 (E.D.Mo.1969).

3. Dent v. St. Louis-San Francisco Ry., 406 F.2d 399 (5th Cir. 1969); Johnson v. Seaboard Air Line RR, 405 F.2d 645 (4th Cir. 1969); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968); Quarles v. Philip Morris, Inc., 271 F.Supp. 842 (E.D.Va.1967) (Butzner, J); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967)

rev'd on other grounds sub nom. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968).

4. We are primarily concerned with 42 U.S.C. § 2000e–5, which provides in part:
(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer * * * has engaged in an unlawful employment practice, the Commission * * * shall make an investigation of such charges * * *. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion.
　　*　　　*　　　*　　　*　　　*
(e) If * * * the Commission has been unable to obtain voluntary compliance with this subchapter, the Commis-

We hold that it does not and reverse the judgment of the district court.

On or about June 19, 1967 plaintiff-appellant William J. Beverly applied for a job with defendant-appellee Lone Star Lead Construction Co. (Lone Star); he was told by Lone Star that there were no available jobs and that there were "no applications." A week later he filed a charge with the EEOC alleging unlawful discrimination in violation of Title VII in that he had been denied employment because he was a Negro. By decision of April 7, 1969, the EEOC found that "reasonable cause does not exist to believe that the Respondent is in violation of Title VII of the Civil Rights Act as alleged." On May 19, 1969, the Commission issued to appellant a "Notice of Right to Sue Within 30 Days" which stated: "Pursuant to Section 706(e) of Title VII of the Civil Rights Act of 1964,[5] you are hereby notified that you may within thirty (30) days of receipt of this communication institute a civil action in the appropriate Federal District Court."

Appellant then brought this suit on June 11, 1969, alleging in his complaint that Lone Star had no Negro employees and had hired white employees subsequent to his thwarted attempt to make application. The district court granted Lone Star's motion for summary judgment and ruled that "a finding of reasonable cause is a jurisdictional prerequisite to suit in the federal district court."

Because we feel that we face a situation not contemplated by Congress[6] and are unable to find satisfactory assistance in the history of this hotly contested legislation,[7] our disposition of this case is based upon our view of the broad purposes of Title VII. We are convinced that Congress did not intend to make the EEOC final arbiter of complainants' rights.

The enforcement powers of the Commission are non-existent. Its efforts are only supplementary to those the plaintiff must employ himself. To hold that an administrative failure by an agency lacking enforcement power itself, can deprive the plaintiff of his right to sue, the main weapon of the Title VII arsenal, would exalt form over substance.[8]

This point has been so often asserted by this and other courts,[9] most recently by

---

sion shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge * * *.

(f) Each United States district court * * * shall have jurisdiction of actions brought under this subchapter.

This section speaks of a conditional chain of events beginning with a "reasonable cause" finding by the Commission. This finding is to trigger attempts by the Commission to obtain voluntary compliance with the Act. These attempts having failed, the Commission is to notify the grievant of his right to sue on his own behalf, and he must bring suit within 30 days. Note that the statute articulates no course of action should one of the delineated conditional events fail to occur.

5. 42 U.S.C.A. § 2000e–5(e).

6. *See* note 4 supra. Flowers v. Local No. 6, 431 F.2d 205 (7th Cir. 1970); Fekete v. United States Steel Corp.,

424 F.2d 331 (3d Cir. 1970); Grimm v. Westinghouse Electric Corp., 300 F.Supp. 984, 988 (N.D.Cal.1969); *See* Miller v. International Paper Co., 408 F.2d 283, 287 (5th Cir. 1969).

7. *Id.* The legislative history of Title VII has virtually been declared judicially incomprehensible. *E. g.* Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399 (5th Cir. 1969); Johnson v. Seaboard Air Line RR Co., 405 F.2d 645 (4th Cir. 1968).

8. Holliday v. Railway Express Co., Inc., 366 F.Supp. 898 (N.D.Ga.1969) (Edenfield, J.).

9. *E. g.,* Carr v. Conoco Plastics Co., 423 F.2d 57 (5th Cir. 1970); Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399 (5th Cir. 1969); Johnson v. Seaboard Air Line RR Co., 405 F.2d 645 (4th Cir. 1968); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

this circuit in Miller v. International Paper Co., *supra,* that discussion is not necessary.

Nonetheless, the EEOC was intended to, and does, play an important role in the legislative scheme.[10] Potential litigants are absolutely required to take a step which affords them at least an *opportunity* to reach a more amicable conciliation out of court.[11]

> It seems clear, therefore, that the requirement of resort to the Commission was designed to give a discriminator opportunity to respond to persuasion rather than coercion, to soft words rather than the big stick of injunction; that the requirement was not designed to serve as a screen to prevent frivolous complaints from reaching the courts.[12]

We do not think the parties should be allowed to bypass this requirement.[13] It is our interpretation of Title VII that there exists an absolute right in each complainant to bring a civil action in federal court. This right, however, is subject to one important proviso: The complainant must comply with the minimum jurisdictional requirements necessary to allow the opportunity for conciliation to mature. The purpose of the Act would indeed be frustrated if the Commission could be avoided entirely or if a party's right to proceed in federal court could be erased by a quasi-judicial determination of the EEOC.

■ We conclude therefore, that the administrative remedies available from the EEOC must be "exhausted" in the traditional sense of the term, as a prerequisite to federal suit.[14] Mondy v. Crown Zellerbach states our position well:

> We feel that this problem is properly treated as one of exhaustion of administrative remedies. These plaintiffs have decided to proceed under Title VII of the Civil Rights Act of 1964, and therefore must do everything in their power to achieve their goals through the E.E.O.C. before going to court. But 42 U.S.C.A. § 2000e–5(e) sets out only two requirements for an aggrieved party before he can sue * * * There is nothing more that a person can do, and this Court will not ask that he be responsible for the Commission's failure to conciliate, as that body's inaction is beyond the control of the charging party. To bar a party from bringing suit because the E.E.O.C. has shirked its statutory responsibility would indeed be to provide a hollow remedy and to inflict an undeserved penalty upon an innocent person.[15]

■■ To this end, the tenor of the cases has established only two jurisdic-

---

10. In fiscal 1969, the Commission processed over 17,000 new charges. Of these, over 9,000 were recommended for investigation. Conciliation efforts were completed involving a total of 1,305 charges, affecting as respondents 774 employers, unions, employment agencies and labor-management apprenticeship committees. Of these, 456 were fully successful and 90 were partially so. In addition, the Commission has participated in litigation as amicus curiae and conducts its own investigations and public hearings, EEOC, Fourth Annual Report, Report 51, CCH Labor Law Reports Supp., September 24, 1970.

11. Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399 (5th Cir. 1969); Johnson v. Seaboard Air Line RR Co., 405 F.2d 645 (4th Cir. 1968); Stebbins v. Nationwide Mutual Ins. Co., 382 F.2d 267 (4th Cir. 1967); Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967).

12. Hall v. Werthan Bag Corp., 251 F. Supp. 184, 188 (N.D.Tenn.1966).

13. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Johnson v. Seaboard Air Line RR Co., 405 F.2d 645 (4th Cir. 1968); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

14. Johnson v. Seaboard Air Line RR Co., 405 F.2d 645 (4th Cir. 1968); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968); Quarles v. Philip Morris, Inc., 271 F.Supp. 842 (E.D.Va.1967); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D.La.1967).

15. 271 F.Supp. at 263.

tional prerequisites to suit in federal court under Title VII: (1) the filing of a complaint with the EEOC and (2) the receipt of the statutory notice of right to sue.[16] Early formulation of the latter requirement used the following language: "he must receive statutory notice from the EEOC that it has been unable to obtain voluntary compliance."[17] Subsequent decisions have made it clear that this language, taken from Section 2000e–5, is not to be interpreted in its narrowest sense; it is not necessary either for the Commission to state in its notice that it has been unable to obtain voluntary compliance or for the Commission to have engaged in any attempt at conciliation whatsoever.[18] The sole purpose of this requirement is to provide a formal notification to the claimant that his administrative remedies with the Commission have been exhausted. Significantly, under EEOC regulations, a right to demand and receive such a notice accrues sixty days after the charge

is filed regardless of any act or omission by the EEOC.[19] Were this regulation not written, we would read it into the Act lest a claimant's statutory right to sue in federal court become subject to such fortuitous variables as workload, mistakes, or possible lack of diligence of EEOC personnel.[20]

It is not contended by Lone Star that these conditions have not been met by appellant. Rather, they argue that by the language of section 706, the EEOC is without power to issue the statutory notice because the chain of events leading to the issuance of such notice has not been set in motion by a "reasonable cause" finding.[21] The simple answer to this argument is that the contingency that the EEOC will find "no reasonable cause" is not dealt with in the statute. We decline to adopt Lone Star's proposed construction that the clear import of the Act requires us to treat such a finding as jurisdictional.[22]

16. Flowers v. Local No. 6, 431 F.2d 205 (7th Cir., August 12, 1970); Fekete v. United States Steel Corp., 424 F.2d 331 (3d Cir. 1970); Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

17. *E. g.*, Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399 (5th Cir. 1969); Green v. McDonnell-Douglas Corp., 299 F.Supp. 1100 (N.D.Mo.1969).

18. Cases cited note 3 *supra*. Appellee's reliance upon Dent v. St. Louis-San Francisco Ry, *supra*. is misplaced. *Dent* was not concerned with a finding of no "reasonable cause." That case was primarily concerned with whether actual conciliatory efforts to achieve voluntary compliance were a jurisdictional prerequisite to a suit in the district court. Notwithstanding the provisions of the Act and urgent insistence that such efforts at conciliation were a jurisdictional prerequisite, the court held otherwise. As earlier indicated, the Seventh Circuit in *Flowers* and the Third Circuit in *Fekete* have ruled squarely on the question before us in this case.

19. 29 CFR § 1601.25a(d).

20. For example, the EEOC's finding in the instant case of "no reasonable cause"

relies in part on its conclusion that "Respondent has not hired any employee as a laborer since June 19, 1967." We note that in their answer filed in district court, Lone Star "admits that it hired additional employees after June 19, 1967." Although the two statements may not be irreconcilably in conflict, the possibility that the Commission was in error should certainly be explored further.

21. See note 4 *supra*.

22. Our conclusion is supported by related decisions of this and other circuits which establish that Title VII is by no means the sole remedy available to prospective grievants. It is clear, for example, that certain unlawful employment practices of a labor union may be prosecuted before the NLRB under the National Labor Relations Act as well as before the EEOC under Title VII. *E. g.*, Local Union No. 12, United Rubber, etc., Workers v. NLRB, 368 F.2d 12 (5th Cir. 1966).

We take note of the fact that this court recently held in Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970) that Title VII does not repeal by implication 42 U.S.C. § 1981. In that case the complainant had filed a charge with the EEOC and received a finding of probable cause and a notice of her right to sue within 30 days. Forty-six

Appellant has done all that is required of him and has utilized the only opportunities afforded by the Act to exhaust his administrative remedies. Considering the obviously remedial purposes of the Act, we do not believe that courts should deny a grievant an opportunity to prove the allegations of his complaint solely on the basis of a conclusion by the EEOC that reasonable cause does not exist. The Commission is neither required nor physically able to conduct an "in depth" investigation in every case; apparently the investigative procedure, in the instant case was performed on an ex parte basis, bereft of all of the advantages which come from an adversary proceeding in a court of law.[23] The Commission possesses no power of enforcement; it cannot fix a penalty, issue a citation, or grant a cease and desist order. It seems completely unfair to nullify the grievant's complaint by a non-reviewable conclusion of the Commission, particularly when he has fully complied with the requirements of the statute. In the circumstances of this case the courts afford the only effective remedy under the present state of the law. Lawsuits and disputes are for the courts. We will not permit the single finding of this investigatory agency to stand as a complete defense which precludes all hope of adversary adjudication or remedial action in the courts. This conclusion is strongly supported by the decision of the Third Circuit in Fekete v. United States Steel Corp.:

> [W]e conclude that good reason and fealty to the spirit and purpose of the Act command that we do not require an affirmative finding by the Commission as the passport for judicial review. To engraft more significance onto the Commission's preliminary finding is to suggest that in this important federal legislation, purposely enacted to protect the rights of aggrieved individuals who believe they have suffered discrimination, it was the intention of Congress to create a Commission completely stripped of power to enforce the Act against an errant employer, but superbly endowed with power to frustrate the prosecution of any claim by the simple expedient of issuing a non-reviewable order saying there is no reasonable cause to believe a violation existed. We cannot accept the hypothesis that Congress intended to entrust the key to judicial relief with an agency given no power to direct the processing of a civil action in court.[24]

Although this case is one of first impression before this court, the question has already been decided in the complainant's favor in other circuits and by numerous district courts.[25] We adhere

days later she brought suit under Title VII. Faced with a motion to dismiss by the respondent, she amended her complaint to assert a claim under § 1981. The district court granted the motion to dismiss; we reversed and followed the decision of the Seventh Circuit in Waters v. Wisconsin Steel Workers. etc., 427 F.2d 476 (7th Cir. 1970) and held that her amended complaint was sufficient to withstand a motion to dismiss. The Waters case requires that a party who complains of a racially discriminatory hiring policy be required to exhaust administrative remedies available under Title VII unless a reasonable excuse for failure to do so is shown.

Although it is readily apparent that Congress did not have § 1981 in mind when Title VII was enacted, the two statutes are not in irreconcilable conflict; repeal by implication, therefore, is not appropriate. Doubtless the two acts are not in entire agreement. We think, nevertheless, that the differences which arise may appropriately be resolved on a case by case basis. Waters, supra. One such conflict has already been resolved satisfactorily in Waters. Because of the strong emphasis on conciliation, complainants may not be allowed to bypass the Commission without good reason. Thus a § 1981 plaintiff must first exhaust his Title VII remedies or plead a reasonable excuse for failure to do so.

23. See note 20 supra.

24. 424 F.2d 331, 336 (3d Cir. 1970) (Footnotes omitted).

25. Flowers v. Local No. 6 Laborers etc., 431 F.2d 205 (7th Cir., Aug. 12, 1970); Fekete v. United States Steel Corp., 424 F.2d 331 (3d Cir. 1970); Grimm v.

generally to the reasoning of these cases, especially *Grimm, Fekete,* and *Flowers.*

> While of course we are not bound by the decisions of the courts of appeals of the two circuits which have heretofore passed upon precisely the same question, we think it appropriate to say that it would take extremely cogent reasoning to cause us to take a different view on a matter of statutory construction.[26]

Moreover, this court has, in effect, decided in Miller v. International Paper Co., *supra,* that a finding of reasonable cause is not a jurisdictional prerequisite to a Title VII action.[27] In that opinion we made a detailed investigation of the Act and its history and concluded emphatically that "the action or inaction of the EEOC cannot affect the grievant's substantive rights under the statute."[28] Realizing that there exists at least a technical distinction between *Miller* and the instant case, we nonetheless believe our decision here—that a finding of "no reasonable cause" by the Commission does not foreclose complainant's right to sue under Title VII—is logically compelled by *Miller.*

Further, we are convinced by the analysis of *Grimm,* supra, that Congress did not give the Commission the authority to take any action affecting the substantive rights of grievants which are not subject to judicial review. Title VII itself implicity recognizes this fact by provisions which (1) assume the existence of the power of courts to make independent *de novo* rulings[29] and (2) afford no binding weight to Commission actions.[30] In addition, a host of appellant decisions have adopted a similar narrow view of the Commission's power.[31]

Additionally, we note that the interpretation of the Act here propounded is substantially the same as that which the EEOC has argued in its amicus brief and is in accord with the spirit of applicable EEOC regulations. Again, we are certainly not bound by the EEOC's interpretation of its own enabling statute. The fact that we are in accord does, however, add to our confidence that our interpretation is a correct one which will be administered as indicated.[32]

The district court's judgment is reversed and the case is remanded for a trial of appellant's claim on the merits.

Reversed and remanded.

Westinghouse Elec. Corp., 300 F.Supp. 984 (N.D.Cal.1969); Aiken v. New York Times (S.D.N.Y.1969); Brown v. Frontier Airlines, Inc., 305 F.Supp. 827 (C. Colo.1969); McDonald v. American Federation of Musicians, 308 F.Supp. 664 (N.D.Ill.1970); Ross v. Continental Telephone Service Corp., 61 L.C. ¶ 9376 (D. N.Mex.1969); Walker v. Keathley's. Inc., 62 L.C. ¶ 9405 (W.D.Tenn.1969). Contra: Davis v. Boeing Co., L.C. ¶ 9312 (D.C.Wash.1969) (appeal pending); Green v. McDonnell-Douglas Corp., 299 F.Supp. 1100 (N.D.Mo.1969); Flowers v. Local No. 6, 61 L.C. ¶ 9358 (N.D.Ill. 1969), rev'd 431 F.2d 205 (7th Cir. 1970).

**26.** Western Nat'l Life Ins. Co. v. Commissioner of Internal Revenue, 432 F.2d 298, at 301 (5th Cir. 1970).

**27.** Accord: cases cited note 2 *supra.*

**28.** 408 F.2d at 291.

**29.** *E. g.,* Section 2000e–5(a) says that nothing said or done before the Commission may be used as evidence in court. *See* King v. Georgia Power Co., 295 F. Supp. 943 (N.D.Ga.1968).

**30.** *E. g.,* § 2000e–12(b) implicitly recognizes that Commission determinations are susceptible to judicial reversal. *See e. g.* American Newspaper Publishers Ass'n v. Alexander, 294 F.Supp. 1100 (D.D.C. 1968); Cox v. United States Gypsum Co., 284 F.Supp. 74 (N.D.Ind.1968) aff'd as modified on other grounds, 409 F.2d 289 (7th Cir. 1969) (holding that a grievant is not bound by a conciliation agreement reached between the EEOC and a respondent).

**31.** E. g., cases cited notes 2, 3, 6, 25 *supra.*

**32.** Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).