**Rhea BUDRECK et al., Plaintiffs,**

v.

**CROCKER NATIONAL BANK, Defendant.**

**No. C–75–1100–CBR.**

United States District Court, N. D. California.

Jan. 29, 1976.

Sanford Ress, Michael S. Milligan, Lewis M. Becker, Palo Alto, Cal., for plaintiffs.

Morrison & Foerster, James C. Paras, Raymond L. Wheeler, James N. Odle, David L. Slate, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This case came before the Court on defendant Crocker National Bank's motions to dismiss, to strike, to make more definite, and to sever portions of plaintiffs' complaint. Plaintiffs, five individuals * suing on behalf of themselves and various classes of defendant's past, present and future employees, allege that defendant "has a policy of discriminating against its employees who are minorities, women, or persons between 40 and 65 years old * * *." Relief is sought under 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended, hereinafter "Title VII"), 42 U.S.C. § 1981 (Civil Rights Act of 1866), and 29 U.S.C. §§ 621 *et seq.* (Age Discrimination in Employment Act). Jurisdiction is alleged to exist under 28 U.S.C. § 1331, 42 U.S.C. § 2000e–5(f)(3), and 29 U.S.C. § 626c.

The Court ruled on defendant's motions from the bench, but, because of the unsettled state of the case law concerning several of the issues raised by defendant, the Court decided that a written memorandum of opinion in support of certain of the rulings was appropriate. The motions to be discussed were premised on the argument that dismissal was appropriate because of plaintiffs' failure to satisfy certain jurisdictional prerequisites to a private civil action established by § 2000e–5(f)(1) of Title VII. Defendant's first contention was that Title VII requires a potential plaintiff to defer the filing of suit in federal court for a period of 180 days after the Equal Employment Opportunity Commission ("the Commission") assumes jurisdiction over his charge of employment discrimination. Defendant's second contention was that Title VII requires a potential plaintiff to obtain a notice of the right to sue ("right-to-sue letter") from the

---

* The suit was originally brought by plaintiffs Budreck, Morris, and Johnson. Plaintiffs Tou- chette and Collins were added as named plaintiffs in an amended complaint.

Commission prior to filing suit, or, at the very least, prior to the hearing on a motion to dismiss based on the failure to obtain such a letter. These contentions will be considered *seriatim* in the discussion that follows.

In considering defendant's motions, the Court was guided by two principles basic to any interpretation of Title VII. First, as stated by the Court of Appeals for this Circuit: "The Equal Employment Opportunity Act is a remedial statute to be liberally construed in favor of victims of discrimination." *Davis v. Valley Distributing Co.*, 522 F.2d 827, 832 (9 Cir. 1975). Equally important, however, was an awareness by the Court of the administrative process selected by Congress to achieve that remedial purpose. That process was well described in a recent decision of the United States Supreme Court:

> "Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. [citations omitted] *Cooperation and voluntary compliance were selected as the preferred means for achieving this goal.* To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes *through conference, conciliation, and persuasion*

*before the aggrieved party was permitted to file a lawsuit." Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974) (emphasis added).

### I

The first issue presented by defendant's motions was whether the claims of plaintiffs Budreck and Touchette must be dismissed because of their failure to defer the filing of this action for a period of 180 days after the Commission assumed jurisdiction over their charges. There is no factual dispute as to whether those plaintiffs had deferred the filing for that period of time; they clearly had not.

Plaintiff Budreck filed the charge of discrimination upon which her present action was based with the Commission on March 12, 1975.[1] Although the Commission requested the California Fair Employment Practices Commission ("FEPC") to waive deferral of the charge because of its relation to "current private litigation", the FEPC declined to do so. Consequently, on March 24, 1975, the Commission deferred the charge to the FEPC, which did not close its file on the charge until June 11, 1975. Title VII requires that a charge be deferred to an appropriate state agency such as the FEPC for a period of not less than 60 days. 42 U.S.C. § 2000e–5(c). The Commission's practice is automatically to assume jurisdiction over deferred charges after the passage of 60 days. Although the parties differ as to the appropriate date for the assumption of

---

1. Plaintiff Budreck had earlier filed a charge directly with the California FEPC in August of 1974 alleging discrimination because of a physical handicap in the form of a congenital defect in her hip joint. At that time, Budreck apparently also felt that she was being discriminated against because of her sex, but she filed the charge on the basis of her physical handicap because of the FEPC policy of encouraging complainants to file on only one ground of discrimination. The FEPC investigator who was assigned the case interviewed seven of defendant's personnel in her investigation and in a progress report dictated February 21, 1975, recommended that the case be left open for further investigation. On March 17, 1975, Budreck filed an amended charge with the FEPC to include a charge of sex discrimination. At approximately the same time, the FEPC investigator learned that she was, contrary to FEPC policy, investigating the charge before cases which had been filed earlier. She informed the parties that she would have to terminate the investigation for several months unless defendant requested that it be continued, which it did not. During this same period in March, Budreck contacted her present attorney. *See* note 3 *infra*.

Commission jurisdiction, they agree that under the 60-day rule it was not before May 23, 1975.[2] Less than two weeks later, on June 3, 1975, plaintiff Budreck and two others filed this action.[3] On June 10, 1975, after the filing of this action, Budreck obtained a right-to-sue letter which was included in an unfiled addendum to the complaint dated June 16, 1975.[4]

Plaintiff Touchette rushed through the administrative process even more rapidly. She filed the charge of discrimination upon which her present action was based with the Commission on August 6, 1975. This charge was deferred to the FEPC on August 11, 1975, and notice that the FEPC declined jurisdiction was received by the Commission on August 13, 1975. Prior to the issuance of a right-to-sue letter, plaintiff Touchette sought to be added to this suit by means of an amended complaint which was filed on August 14, 1975. Her right-to-sue letter thereafter issued on September 3, 1975, and was filed as an addendum to the amended complaint on September 15, 1975.

■ Defendant argued that the language of the statute, especially when read in conjunction with its legislative history, demonstrates that Congress intended the 180-day provision to be a jurisdictional prerequisite to a private civil action. Additionally, defendant argued that that Congressional intention is supported by sound policy considerations. In opposing the motions plaintiffs responded that the language of the statute is not sufficiently unequivocal to support a jurisdictional interpretation and that policy considerations weigh against such an interpretation. Each side cited a plethora of authorities in support of its position. After a careful examination of the language of the statute, its legislative history, and the relevant policy considerations involved, the Court concluded that the 180-day provision is jurisdiction-

**2.** Plaintiffs suggested a date of May 27, 1975, and the defendant suggested a date of May 23, 1975. For purposes of this ruling, the difference is immaterial.

**3.** The Commission and FEPC documents filed with the Court clearly indicate that Budreck's attorney did all that he could do to accelerate the case's progress toward a filing in this Court. As early as March 12, 1975, Budreck's attorney telephoned the FEPC stating that he wanted to have the charge amended to include a claim of sex discrimination and that he wanted to have the case closed because of anticipated court action. On the same day, Budreck's charge with the Commission was filed, accompanied by a cover letter urging the Commission to assume jurisdiction as soon as possible. On March 17, 1975, the Commission requested the FEPC to waive deferral of the charge filed by Budreck for the stated reason that the charge was related to current private litigation, litigation which at that time had not even been filed. Presumably, the information about the pending litigation came from Budreck's attorney. On March 21, 1975, the FEPC investigator dictated a memorandum recommending closure of the case because of statements from Budreck and her attorney that they planned to file an action in federal court based on the same facts. Finally, on May 12, 1975, Budreck's attorney stated that it was his understanding that the FEPC had

waived jurisdiction over the charge filed by Budreck, and he requested the issuance of a right-to-sue letter for Budreck. As stated above, the FEPC had not waived jurisdiction over Budreck's claims and did not close its file on the case until June 11, 1975.

Although Budreck's attorney was, no doubt, acting in what he perceived to be his client's best interest in attempting to cut short the administrative process at the FEPC and the Commission, his actions seem to the Court to be fundamentally inconsistent with the statutory scheme of Title VII. To be sure, Budreck's attorney cannot be excessively faulted, because, in order for such efforts to have any effect, they must be favorably received by the responsible authorities in the two agencies. There does appear to be a tendency to suspend the administrative process when a private civil action covering the same facts has been or is about to be filed. While this tendency may be understandable in light of the heavy caseloads facing the agencies, it too appears to be inconsistent with the statutory scheme of Title VII.

**4.** This addendum has been referred to in several of the documents filed with the Court, but it was apparently never filed. It does not appear in the file or on the docket sheet for the case. The Court has other copies of the relevant right-to-sue letters, but it notes that more care should be taken with such significant pleadings.

al. Accordingly, the Title VII claims of Budreck and Touchette were dismissed.

The proper starting point for the analysis of a disputed statutory right is, of course, the language of the statute itself. Section 2000e–5(f)(1) provides in relevant part:

"If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or *if within one hundred and eighty days from the filing of such charge* or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days *after the giving of such notice a civil action may be brought* against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice." (Emphasis added.)

Plaintiffs argued that Section 2000e–5(f)(1) contains "procedural ambiguities" which should not be construed to infringe upon their right to recover for illegal employment discrimination. They further argued that if Congress had intended to forbid private actions from being brought before the passage of 180 days from the date the charge is filed with the Commission, Congress would have used more direct and forceful language. The wording of the statute is admittedly convoluted, but, in the Court's view, it is not ambiguous. And, while it is true that the statute does not state that "*No* action shall be brought unless \* \* \*", it is also true that Section 2000e–5(f)(1) is the *only* statutory authorization for a private civil action under Title VII and that it is expressly conditional. The statute appears to authorize private civil actions only where both of two conditions precedent have been met: (1) 180 days have passed since the filing of the charge, or it has been sooner dismissed, and (2) a right-to-sue letter has thereafter been obtained.[5] In the event that a conciliation agreement has been reached to which the person aggrieved is a party, a private civil action is obviously unnecessary. In the event that an action has been commenced by the Commission or the Attorney General, intervention by the person aggrieved is the appropriate course of action. The 180-day period is, therefore, the time during which these actions or, alternatively, informal conciliation are given a chance to take place. In order to accept the position advanced by plaintiffs, the Court would have had to ignore the conditional "If \* \* \*" phrasing of the statute. Therefore, based only on the language of Section 2000e–5(f)(1), the Court was strongly disposed to follow the ruling in *Jones v. Pacific Intermountain Express,* 10 FEP Cases 914 (N.D.Cal.1975), granting a motion to dismiss for failure to observe the 180-day provision. *Accord, Troy v. Shell Oil Co.,* 378 F.Supp. 1042 (E.D.Mich.1974).

The legislative history of the 1972 Amendments to Title VII[6] provides fur-

---

**5.** The statute also contains a condition subsequent in the form of a 90-day statute of limitations governing the private civil action. The 90-day period begins to run at the time that the notice of the right to sue is given. *See* note 20 and accompanying text, *infra.*

**6.** The citations in this Memorandum of Opinion to the legislative history of the 1972 Amendments are to the following compilation of those extensive materials: Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92d Cong., 2d Sess., *Legislative History of the Equal Employment Opportunity Act of 1972* (Comm.Print 1972) (hereinafter "Legislative History"). The documents relied upon are specifically named, but the pagination given is that of the compilation rather than the particular document.

ther support for a jurisdictional interpretation of the 180-day provision. The explanation of that provision in the Committee Reports concerning the statutory authorization for a private civil action are all phrased in the same conditional language of the statute itself.[7] But, more importantly, the legislative history clearly indicates that the drafters of the 1972 Amendments were conscious of the already-existing problems of acute congestion of cases filed with the Commission and that they drafted the 180-day provision as a direct response to that situation.

In both the House and Senate Reports on the bills that were to become the 1972 Amendments to Title VII, the discussion of the private civil action and its time requirements immediately preceded an explicit recognition of the large number of charges pending before the Commission. The House Report noted that: "In recent years regulatory agencies have been submerged with increasing workloads which strain their resources to the breaking point."[8] In the particular case of the Commission, the Report indicated that the situation was so bad that in many instances parties had to "wait 2 to 3 years before final conciliation procedures can be instituted."[9] The private civil action was seen and, indeed, justified as a "means by which [the injured party] may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process."[10] The Senate Report contained a very similar recital of the problems facing the Commission and the function of the private civil action.[11] Finally, the Conference

---

7. The Report of the House Committee on Education and Labor (Section-by-Section Analysis), H.R.Rep. No. 92–238, 92d Cong., 1st Sess. (1971), states that:
   "[The bill] provides that if the Commission dismisses a charge after a preliminary investigation indicates no cause, or on grounds of lack of jurisdiction, or if after 180 days from the filing of a charge the Commission has not made a finding of no reasonable cause or entered into a conciliation agreement acceptable to the Commission and to the person aggrieved, the Commission shall notify the aggrieved party, and within 60 days [90 days as finally enacted] of such notification such party may bring a civil action against the respondent named in the charge." *Legislative History, supra,* at 91.
   Similarly, the Report of the Senate Committee on Labor and Public Welfare (Section-by-Section Analysis), S.Rep. No. 92–415, 92d Cong., 1st Sess. (1971), states that:
   "[The bill] preserves the private right of action by an aggrieved person. Under this subsection, the aggrieved person may bring such an action within 60 days [90 days as finally enacted] after being notified by the Commission that it has dismissed the charge, or when 180 days have elapsed from the filing of the charge without the Commission having issued a complaint * * * or without the Commission having entered into an agreement * * * to which the person aggrieved is a party." *Legislative History, supra,* at 449.

Finally, the Joint Senate-House Conference Report (Joint Explanatory Statement of Managers), S.Rep. No. 92–681, 92d Cong., 2d Sess. (1972), states that:
   "[The bill passed by the] Senate * * * allowed a private action *if* no case is brought by the Commission * * * within 150 days. The House bill permitted a private action *after* 180 days * * *.
   "The conferees adopted a provision allowing * * * [aggrieved parties to] bring a private action *if* the Commission * * * has not brought suit within 180 days or * * * entered into a conciliation agreement to which such aggrieved party is * * * a signatory." (Emphasis added.) *Legislative History, supra,* at 1815–1816.
Although the official enforcement provisions of the bill that was reported out of committee were substantially altered by later amendments, the provisions governing private actions were enacted essentially unchanged.

8. Report of the House Committee on Education and Labor, *supra, Legislative History, supra,* at 72.

9. *Ibid.*

10. *Ibid.*

11. Report of the Senate Committee on Labor and Public Welfare, *supra, Legislative History, supra,* at 432–433.

Report on the modified bill that was eventually enacted stated that:

"Moreover, [the private civil action] is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission or the Attorney General does not act with due diligence and speed. Accordingly, the provisions described above allow the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." [12]

Because the 1972 Amendments were enacted with specific recognition of the delay in Commission action and of the role of the private civil action in alleviating that problem, the conclusion seems inevitable that the 180-day provision represents a carefully considered Congressional judgment of the proper accommodation between dual concerns. On the one hand, Congress was concerned that the vindication of legitimate claims not be excessively delayed, and, on the other, it was concerned that the preferred process of conciliation of disputes have an ample opportunity to work.

Faced with unfavorable statutory language and legislative history, plaintiffs relied primarily upon case authority for support for their position. Defendant countered by citing a large number of cases in further support of its position. Before considering these authorities, an introductory comment is appropriate. The analysis of the case law construing the various statutory requirements for a private civil action under Title VII is made more difficult because of the enormous quantity of *dicta* on the subject. In addressing a particular issue of law under Title VII, courts frequently have provided an overview of the statute in order to place the issue with which they are concerned in proper perspective. Both plaintiffs and defendant cited a number of cases which include such generalized and essentially extraneous statements of the law of Title VII. Although such statements may appear to bear on the correct interpretation of the 180-day provision, they do not constitute authority for that issue, because it was not before those courts.

Two examples drawn from Supreme Court decisions, one apparently supporting plaintiffs and the other the defendant, illustrate this analytical difficulty. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Court considered the question of whether a private civil action could be based on charges as to which the Commission had not made findings of reasonable cause. In the context of deciding that such a finding was not necessary, the Court stated that:

"Respondent satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U.S.C. §§ 2000e–5(a) and 2000e–5(e)." 411 U.S. at 798, 93 S.Ct. at 1822.

If the Court's statement were taken to be a comprehensive statement of the jurisdictional requirements for a private action under Title VII, it would support plaintiffs' argument that the 180-day provision is not jurisdictional. However, the question of the effect to be given to the 180-day provision was simply not before the Court in *McDonnell Douglas,* because the petitioner had filed his charges of discrimination with the Commission in mid-1965 but had not filed suit until April of 1968. Consequently, to the extent the Court considered the question at all, it may simply have presumed that the second requirement, "receiving and acting upon the Commission's statutory notice of the right to sue", would not occur until the expiration of the statutory period as required by the statute and the Commission's own

---

**12.** Joint House-Senate Conference Report (Section-by-Section Analysis); Congressional Record (Senate) for March 6, 1972; *Legislative History, supra,* at 1847.

regulations. *See* note 21, *infra.* The same difficulty exists with authorities that appear at first glance to support defendant's position. For example, the Supreme Court stated in *Johnson v. Railway Express Agency,* 421 U.S. 454, 458, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975), that:

> "If, however, the EEOC is not successful in obtaining 'voluntary compliance' and, for one reason or another, chooses not to sue on the claimant's behalf, the claimant, *after the passage of 180 days,* may demand a right-to-sue letter and institute the Title VII action himself without waiting for the completion of the conciliation procedures." (Emphasis added.)

The quoted statement appears to support defendant's interpretation of the 180-day provision. However, the question before the Court in *Johnson,* whether the statute of limitations for actions under 42 U.S.C. § 1981 is tolled by the timely filing of an employment discrimination charge with the Commission, did not require the Court to consider the 180-day provision. Accordingly, this statement, like the one in *McDonnell Douglas,* is of little use in resolving the issue now before this Court. Many of the cases cited by the parties suffer from this same infirmity.

There is, however, a sharp division of direct authority both in this District and elsewhere concerning the effect to be given the 180-day provision of Title VII. This division can be fairly illustrated by a consideration of two opinions from this District. As stated above, *Jones v. Pacific Intermountain Express, supra,* 10 FEP Cases 914, held that under Section 2000e–5(f)(1) the failure to defer to the Commission for 180 days is a jurisdictional defect requiring dismissal. The *Jones* court apparently felt that this result was required by the language of the statute alone, although it did not elaborate its reasoning. Because the purpose of the provision was to give the Commission an opportunity to conciliate before suit is filed, the *Jones* court held that the running of the period after suit was filed, but before the hearing on the motion to dismiss, was not sufficient to avoid dismissal. In *Lewis v. FMC,* 11 FEP Cases 31 (N.D.Cal.1975), the same question was decided differently. The *Lewis* court held that the provision is not jurisdictional and that it need not be enforced when it is clear that the Commission will be unable to reach the underlying charge within the 180-day period. *Accord, Howard v. Mercantile Commerce Trust Co.,* 10 FEP Cases 158 (E.D. Mo.1974); *cf. Black Musicians v. Musicians Local 60–471,* 375 F.Supp. 902 (W.D.Pa.1974).[13] *Lewis* and *Howard* represent a judicial acceptance of plaintiffs' basic argument, which can be summarized as follows. The purpose of the

---

**13.** The holding in the *Black Musicians* case is inconsistent with a jurisdictional interpretation of the 180-day provision. Even if this Court were inclined to follow that decision, it would provide little support for the position of plaintiffs in this case because of the difference in the facts of the two cases. At the time the suit was filed in *Black Musicians,* no charge had been filed with the Commission. However, a charge was subsequently filed, and, before the hearing on the motion to dismiss, the Commission had examined the evidence submitted to it, made a finding of reasonable cause, and attempted and failed to achieve conciliation. In that context, the court held that the issuance of a subsequent right-to-sue letter "in effect, validated the pending suit making it unnecessary to file another suit." *Id.* at 907. The court made it clear that it based its decision on the facts of the case before it, facts which are quite different from those in the instant case.

Although two other cases from this District contain language supporting plaintiffs' interpretation of the 180-day provision, each of the cases was clearly decided on a narrower rationale and cannot be considered as authority for the position. In *Bauman v. Union Oil Co.,* 400 F.Supp. 102 (N.D.Cal.1973), a motion to dismiss based on premature issuance of a right-to-sue letter and premature filing of the action in federal court was denied. The court held that the letter had not been issued prematurely because the charge on which it was based could be treated as an amendment to an earlier charge which had been before the Commission for the requisite period. Similarly, in *Gary v. Industrial Indemnity Co.,* 7 FEP Cases 195 (N.D.Cal.1973), a motion to dismiss based

180-day provision is to allow time for the Commission to attempt to conciliate the underlying dispute. If the backlog of cases before the Commission is so great that the Commission is willing to certify that it will be unable to reach a particular claim during the 180-day period, no statutory purpose would be served by enforcing the provision. Therefore, the argument concludes, Congress could not have intended to require such an exercise in futility as a prerequisite to the bringing of a private civil action.

The argument advanced by plaintiffs and accepted by the *Lewis* and *Howard* courts is superficially attractive, but in the Court's view, ultimately untenable. Leaving the question of the express language of the statute aside, the Court finds that the failure of those courts to take into account the legislative history of the statute, which this Court has found to be such persuasive evidence of Congressional intention, significantly diminishes the weight of their decisions as authority. The argument that deferral to the Commission for the 180-day period would be futile loses its force in the light of Congress' awareness that severe administrative problems were already diminishing the Commission's ability to cope with its caseload.

Understandable sympathy with the cause of remedying employment discrimination must not blind the courts to the fact that Congress established certain procedures for the effectuation of that great goal. Although the federal courts have been given an important role in that effort, it is a secondary role to that of the Commission, and because federal courts are courts of limited jurisdiction, the scope of their role as established by Congress must be accepted. *See Troy v. Shell Oil Co., supra,* 378 F.Supp. at 1044.

Apart from the restraint mandated by the basic nature of federal jurisdiction, there are prudential reasons for restraint in this area. If the statutory procedures established by Title VII manifestly do not work as intended, as appears to be the case here, it is inappropriate for the courts, in effect, to rewrite the legislation in an effort to provide an effective forum for the protection of the substantive statutory rights. The far better course is to administer the law as it is written, confident, or at least hopeful, that its failure to function as intended will not long escape the attention of Congress. By constructing a jerry-built substitute for the statutory procedure, the courts risk delaying even longer a truly adequate solution to an exceedingly serious problem. At the very least, it should be abundantly clear to all that an adequate solution to the problem of case congestion in the Commission cannot be a wholesale transfer of that congestion to an already overburdened federal judiciary. The unfortunate effect of the Commission's policy of immediate issuance of right-to-sue letters is, however, to make the federal courts the primary, rather than secondary, forum for Title VII disputes.

Apart from the considerations stated above, the *Lewis* and *Howard* decisions also fail to take into account certain policy considerations which support a jurisdictional interpretation of the 180-day provision despite the inability of the Commission to take any action during that period. The 180-day provision gives the employer an opportunity to make an investigation of the charge and to attempt to resolve the matter before positions become hardened by the onset of litigation. Congress undoubtedly expected most conciliation agreements to result

on the "very narrow" argument that "the right-to-sue letter issued prematurely deprives this court of jurisdiction despite the otherwise timely filing of the action" was denied. *Id.* at 194. Although the letter had issued prematurely, suit had not been filed until the 180-day period had run. The early issuance of the right-to-sue letter by itself might create some of the same obstacles to informal conciliation

that the early filing of a law suit creates. *See* discussion *infra.* On the other hand, the letter might produce an impetus to the employer to negotiate a settlement before the full legal apparatus comes into effect. This Court need not decide that question here, because the issue in *Gary* was not the same as the one in this case.

from the efforts of the Commission but, even without the intervention of the Commission, informal conciliation may be possible in some cases. That this possibility was ignored in *Lewis* is clear from the following quotation from that case:

"In the absence of assistance and participation by the EEOC, the employer and the grieving employee stand in the same posture with respect to possible settlement of their dispute after suit is filed as they do while the charge is pending before the EEOC without any possibility of agency action." 11 FEP Cases at 34.

This Court disagrees, believing instead that the filing of a law suit alters in a very significant way the posture of the parties and their ability to reach an informal settlement. It is not feasible for the courts to make a case-by-case determination of whether informal conciliation might be possible; the rule must be enforced on an across-the-board basis. The possibility of informal conciliation during the 180-day period further supports the Court's previous conclusion that a jurisdictional interpretation is appropriate.

Proceeding by analogy, plaintiffs attempted to buttress the direct authority of *Lewis* and *Howard* by characterizing them as part of a larger pattern of cases in which "the conciliation theory" underlying the statutory scheme "has been completely eroded." In support of this proposition, plaintiffs cited a number of cases, holding, *inter alia*,[14] that a private civil action is not precluded by the absence of conciliation attempts by the Commission or by the failure of the Commission to follow its own rules, even where that failure renders conciliation

less likely. Plaintiffs' argument reflects, in the Court's view, a fundamental misunderstanding of the Congressional intention in authorizing a private civil action under Title VII. Conciliation was undoubtedly an important goal of the drafters of Title VII and its 1972 Amendments but, as revealed by the language of the statute and the legislative history, it was not an exclusive goal. Once this important point is understood, it is not necessary to postulate an erosion of the "conciliation theory" to explain the cases cited by plaintiffs. Those cases are in fact consistent with a jurisdictional interpretation of the 180-day provision. The statute does not make actual conciliation efforts or error-free performance of its duties by the Commission a jurisdictional requirement of a private civil action. Even more fundamentally, it is clear from the legislative history that Congress contemplated that the Commission might be too busy to reach some cases within 180 days and that the Commission would make mistakes in performing its duties. The 180-day period provides the outside limit of how long an individual must wait, in the event that these or other problems delay[ed] the resolution of his charge. The cases cited by plaintiffs add nothing to the direct authority already considered.

Because the decision of the Court of Appeals for this Circuit in *Jefferson v. Peerless Pumps Hydro., Div. of FMC Corp.*, 456 F.2d 1359 (9 Cir. 1972), has been cited both by plaintiffs and by several courts in support of a non-jurisdictional interpretation of the 180-day provision, it merits more direct examination. With respect, this Court concludes that the *Jefferson* case provides neither controlling nor indeed persuasive support

---

**14.** Plaintiff also cited a series of cases holding that a district court has jurisdiction to issue a temporary injunction prior to the expiration of the 180-day period in order to maintain the status quo pending administrative disposition of the charges. *See, e. g., Drew v. Liberty Mutual Insurance Co.*, 480 F.2d 69 (5 Cir.), *cert. denied*, 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1973). These cases are not con-

cerned with the language of the statute authorizing a private right of action and do not support plaintiffs' position that a court may entertain a suit for *permanent* relief prior to the expiration of the 180-day period. The result reached in these cases has recently been endorsed by the Court of Appeals for this Circuit in *Berg v. Richmond Unified School District*, 528 F.2d at 1208 (9 Cir. 1975).

for plaintiffs' position. The district court in that case had dismissed plaintiff Jefferson's Title VII claim, citing three grounds for its lack of jurisdiction. The Court of Appeals for this Circuit, construing the statute as it existed before the 1972 Amendments, reversed, holding that the district court had applied erroneous legal standards in reaching each of the three stated grounds for dismissing the claim. The first two grounds are not relevant here.[15] The third was that the district court "lacked jurisdiction until the EEOC exhausted its powers, made a finding of reasonable cause, and attempted to obtain voluntary compliance." 456 F.2d at 1360. The Court of Appeals disagreed, refusing to read a requirement of Commission action into the statutory language. In this context, the court stated that:

> "Once the grievant has given the EEOC an opportunity to make an investigation and attempt a conciliation, and he has been notified that the EEOC has been 'unable' to do so, he may bring his cause into federal court." 456 F.2d at 1361.

Although the court was clearly not addressing the question at issue here, this quotation might seem to support plaintiffs' position on the 180-day provision. However, another statement by the court demonstrates that the Court of Appeals did not intend to undercut the enforcement of the 180-day requirement. The court stated that:

> "The grievant need not wait for the EEOC to complete its investigation, make its finding, or attempt a conciliation. He may demand notification that the EEOC *has been* 'unable' to effect conciliation *within the time limit set by § 2000e–5(e),* and sue thirty days thereafter." *Ibid.*

This second quotation indicates that the court assumed that the demand for notification would come *after* the statutory period had elapsed. In order to support plaintiffs' position, the language would have had to read: "He may demand notification that the EEOC *is* 'unable' to effect conciliation, and sue * * *." On careful analysis, the *Jefferson* decision is not a controlling precedent and, to the extent that it does bear on the issue now before the Court, it more clearly supports defendant's position than plaintiffs'.

Dismissal of actions in which the 180-day provision has not been observed is the only way that compliance with the statutory requirement can be encouraged. The argument that dismissed plaintiffs will simply file new charges with the Commission and, after the expiration of the period, file another action in federal court may be true for those individuals. But in construing the statute, the Court must look beyond the individual case before it. By dismissing the actions of individuals who file in the federal courts prematurely, the courts will deter other individuals from similarly short-circuiting the statutory procedures. By strictly enforcing the 180-day provision, some cases, which would otherwise have come directly to federal court, may be resolved by informal conciliation. In any event, the Court's reading of the statute and its legislative history compels this result until such time as Congress decides to change the statute.[16]

---

**15.** The first ground for dismissal was that "more than ninety days had elapsed between the date he filed his charge with the EEOC, March 19, and the date he brought suit, September 10." 456 F.2d at 1360. The Court of Appeals held that "Jefferson's complaint in the district court was timely filed because it was filed within thirty days [the relevant period before the 1972 Amendments] after receipt of notice from the EEOC that conciliation efforts had been unsuccessful." *Ibid.* The second ground for dismissal was that "Jefferson's charge was not timely filed with the EEOC because it was not first filed with the California FEPC." *Ibid.* The Court of Appeals held that Jefferson's charge was timely filed, thus approving the Commission practice of simply referring charges filed with it to the state body before assuming jurisdiction. As the court stated, "His charge was not filed with the EEOC simply because it was stamped as received and given a case number." *Ibid.*

**16.** *See* note 19, *infra.*

## II

■ The second issue presented by defendant's motions was whether the claims of all the named plaintiffs must be dismissed because of their failure to obtain right to sue letters prior to filing this action. Again, the jurisdictional facts are not in dispute. When the original complaint was filed in this action none of the three named plaintiffs had obtained the statutory right-to-sue letter required by Section 2000e–5(f)(1). Plaintiffs' counsel simply averred that once right-to-sue letters were issued, they would be filed as addenda to the complaint. On June 16, 1975, right-to-sue letters for plaintiffs Budreck, Morris and Johnson were included in addenda to the complaint.[17] On September 3, 1975, plaintiff Touchette received a right-to-sue letter which was filed on September 15, 1975, as an addendum to the amended complaint. At the date of the hearing on these motions, plaintiff Collins still had not received a right-to-sue letter.

Defendant argued that receipt of a right-to-sue letter is, like observance of the 180-day provision, a jurisdictional requirement to a private civil action under Section 2000e–5(f)(1). From this premise, defendant argued that the Court should dismiss the Title VII claims of all named plaintiffs, none of whom received their letters prior to filing suit. In the event that the Court declined to order dismissal of the claims of all named plaintiffs, defendant argued that the Court should dismiss the claim of plaintiff Collins, who still had not received her letter at the time of the hearing. Plaintiffs did not seriously dispute this reading of the statute but argued that dismissal was improper where the letters had been obtained prior to the hearing on the motion to dismiss. With regard to plaintiff Collins, plaintiffs argued, somewhat lamely, that because the issuance of the letters was mandatory and because Collins had made strenuous efforts to obtain her letter, she too should not be dismissed.

As stated above, the Court's reading of Section 2000e–5(f)(1) is that it makes the receipt of a right-to-sue letter an express condition to a private civil action under Title VII. An overwhelming number of courts have drawn this conclusion from the language of the statute, although often only in dicta. `See, e. g., McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 798, 93 S.Ct. 1817 (dicta); Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 926 (5 Cir. 1975) (dicta); Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979 (1973) (dicta); Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136, 1139–1140 (5 Cir. 1971) (dicta). Dismissal of a Title VII claim has been ordered when the plaintiff has not received a right-to-sue letter by the time of the hearing on the defendant's motion to dismiss. Stebbins v. Continental Insurance Companies, 143 U.S.App. D.C. 121, 442 F.2d 843 (1971); Cox v. United States Gypsum Co., 409 F.2d 289 (7 Cir. 1969).[18] Accordingly, because plaintiff Collins had not received her right-to-sue letter at the time of the hearing on these motions, the Court dismissed her Title VII claim.

■ The other four named plaintiffs had not received their right-to-sue letters at the time that this action was filed, although they had received the letters prior to the time of the hearing on defendant's motions. A right-to-sue letter should properly be obtained prior to filing a civil action under Title VII, but recognition of a subsequently issued letter is judicially efficient and does not offend any major statutory policies. The Court of Appeals for this Circuit has recently held that such a "later issuance" of a right-to-sue letter can "cure any initial jurisdictional defect" resulting from the filing of an action prior to the

---

17. See note 4, supra.

18. Even in Black Musicians, discussed in note 13, supra, the court noted that prior to the issuance of a right-to-sue letter the suit "obviously would have been dismissed had the [defendant] moved to do so." 375 F.Supp. at 907.

receipt of the letter. *Berg v. Richmond Unified School District, supra,* 528 F.2d at 1212. *Accord, Henderson v. Eastern Freight Ways,* 460 F.2d 258 (4 Cir. 1972); *Hoover v. Opportunities Indus. Ctr. of Roanoke Val., Inc.,* 348 F.Supp. 657 (W.D.Va.1972). In *Berg,* the court stated that "[t]he sole purpose of this requirement is to provide a formal notification to the claimant that his administrative remedies with the Commission have been exhausted." 528 F.2d at 1212, *quoting Beverly v. Lone Star Lead Construction Corporation, supra,* 437 F.2d at 1140.[19] The statement overlooks what is to this Court a more obvious purpose for the requirement that a

right-to-sue letter be obtained, namely to trigger the running of the 90-day statute of limitation provided by Title VII. *See Cox v. United States Gypsum Co., supra,* 409 F.2d at 291 (construing the predecessor provision which existed before the 1972 Amendments).[20] The result reached in *Berg* can, however, be squared with this second purpose of the requirement. Obviously, when a suit is filed *before* the event that begins the running of time under a statute of limitations, the policy considerations underlying the rule are not seriously compromised. Because a new suit could be filed immediately if this action were dismissed,[21] the Court

**19.** Although *Berg* was decided too late to be included in plaintiffs' memoranda, it is arguably inconsistent with the Court's interpretation of the 180-day provision discussed above and therefore merits discussion on that issue as well. Two principal arguments based on *Berg* could be advanced in opposition to the Court's interpretation of the 180-day provision. The first is based on the facts of *Berg* and the second on its language. Neither, in the Court's view, is persuasive.

Although the statement of facts in *Berg* is not clear on the point, the 180-day provision was quite possibly not observed in *Berg.* However, the fact that one can only speculate about this basic factual issue merely underlines the point that the question of the 180-day provision was not directly addressed by the court. *Berg* is quite clearly not direct authority on this question. Any implicit indications of the court's views on the issue are irreparably obscured by the multiple grounds for the decision. The first ground was that the district court had jurisdiction under 28 U.S.C. § 1343(3) to hear Berg's claim premised on an alleged violation of 42 U.S.C. § 1983, regardless of the jurisdictional requirements of Title VII. The second ground was that the district court had "jurisdiction under Title VII itself to reach the merits of the *preliminary injunction issue.*" 528 F.2d at 1211 (emphasis added). *See* note 14, *supra.* The third ground was that the jurisdictional requirement of the right-to-sue letter (not the 180-day provision) was sufficiently satisfied by receipt of the letter subsequent to filing the action in federal court. The first two grounds would justify the assumption of jurisdiction before the expiration of 180 days even if the 180-day provision were interpreted as jurisdictional. The third ground simply fails to focus on the issue.

The language in *Berg* appears at first glance to play fast and loose with the jurisdictional requirements of Title VII. Speaking of the

right-to-sue letter requirement, the court stated that: "However, we read this statutory requirement in the light of the well-established principle that procedural niceties should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits." This language cannot be taken to mean that federal courts should simply wink at jurisdictional requirements set out in federal statutes, and the context of the opinion in *Berg* confirms that it was not so intended. The court limited its holding, stating that *"under the circumstances here presented"* requiring the plaintiff to commence a new action would be "a pointless exercise in formalism." 528 F.2d at 1212 (emphasis added). So long as right-to-sue letter is received before a motion to dismiss is heard, a court need not stretch too far to find that the jurisdictional requirement is met. As discussed in the text, such a result does not offend any significant statutory policies. However, as the Court has endeavored to demonstrate, the same reasoning simply does not apply to the 180-day provision. The Court therefore concludes that *Berg* is consistent with its holding regarding that provision.

**20.** In *Cox,* the Court of Appeals for the Seventh Circuit stated that: "[W]e think [notice from the Commission] is an important formality. Congress has limited the period within which an action may be begun to thirty days [90 days after the 1972 Amendments]. The shortness of the period makes it all the more important that the time from which it runs be definitely determinable." 409 F.2d at 291.

**21.** Defendant argued that plaintiffs Budreck and Touchette have not satisfied the jurisdictional requirement of obtaining a right-to-sue letter because the letters that they received were "invalid" under the Commission's own regulations. The regulations provide in pertinent part:

concluded that the receipt of the letters subsequent to filing the suit, but prior to the hearing, satisfied the jurisdictional requirement of the statute.

## III

Plaintiffs argued that jurisdiction over the claims of Budreck, Touchette and Collins was proper even if the Court found that the 180-day and notice provisions were jurisdictional. Plaintiffs cited a number of cases in support of this proposition. All but one of the cases concerned the right of an individual to be a member of a class despite the fact that he had not complied with the jurisdictional prerequisites for a private civil action. The Court does not disagree with the holdings in those cases, and to the extent that they are legitimate members of properly designated classes, Budreck, Touchette and Collins will be entitled to share in any recovery that is forthcoming to those classes. However, in *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5 Cir. 1969), the Court of Appeals for the Fifth Circuit reached a result that went beyond that just described. In that case, four named plaintiffs sued on behalf of themselves and the class of "all present and prospective Negro employees" of the defendant. De-spite the fact that only one of the plaintiffs, Hill, had filed an action with the Commission, the court held that: "[I]t is not necessary that members of the class bring a charge with the EEOC as a prerequisite to joining as co-plaintiffs in the litigation." The court limited its holding by requiring that the co-plaintiffs "must proceed however, within the periphery of the issues which Hill could assert." *Id.* at 499. At the most, the holding of the Court of Appeals for the Fifth Circuit, if followed here, would allow Budreck, Touchette, and Collins to assert claims which were raised by the other named plaintiffs in their charges to the Commission. However, if the concept of jurisdictional requirements is to have any effect, some consequence must follow from a failure to comply with them. Accordingly, this Court declined to follow the *Oatis* decision, and instead dismissed the actions of plaintiffs Budreck, Touchette, and Collins.

For the reasons set out above, the Court dismissed the claims of Budreck and Touchette for failure to comply with the 180-day provision and dismissed the claim of Collins for failure to receive a right-to-sue letter prior to the hearing on the motion to dismiss.

"(b) The Commission *shall not issue* a notice pursuant to § 1601.25 prior to a determination [that the charge should be dismissed] or where reasonable cause has been found prior to efforts at conciliation with respondent, except as provided in paragraph (c) of this section.

"(c) At any time after the expiration of one hundred and eighty (180) days from the date of the filing of a charge or upon dismissal of a charge at any stage of the proceedings, an aggrieved person may demand in writing that a notice issue pursuant to § 1601.25, and the Commission shall promptly issue a notice, and provide copies thereof and copies of the charge to all parties." 29 C.F.R. § 1601.25 b (1975) (emphasis added).

Under the pressure of an extensive backlog of pending cases, the Commission is ignoring the requirements of its own regulations. Because the Court has dismissed the claims of these plaintiffs for failure to wait 180 days before filing suit, it is unnecessary to decide this question. If both the issuance of the letter and the filing of suit occur before 180 days have passed, dismissal is proper. If only the issuance of the letter occurs before the 180 days have passed, the situation is the same as in *Gary v. Industrial Indemnity Co., supra,* note 13, 7 FEP Cases at 195.