**Roy J. UNDERWOOD**

v.

**Raymond McBRIDE, as representative of the International Union of Operating Engineers.**

**Homer DAWSON, Edmond Farmer, Louis Lattanzio, Howard Kaye, Stanley Kosiorek, in their own behalf and on behalf of all members of Local 542 and its Branches 542A, 542B and 542C of International Union of Operating Engineers**

v.

**Joseph J. DELANEY and Hunter P. Wharton, individually and as representatives of International Union of Operating Engineers.**

Civ. A. Nos. 2052, 2053.

United States District Court
D. Delaware.
March 28, 1960.

Abraham E. Freedman and Marvin I. Barish, of Freedman, Landy & Lorry, Phildelphia, Pa., and Harold Leshem, Wilmington, Del., for plaintiffs.

William S. Potter and James L. Latchum of Berl, Potter & Anderson, Wilmington, Del., appearing specially for defendants, Charles A. Wolfe of Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., and J. Albert Woll, Washington, D. C., of counsel.

LAYTON, District Judge.

The Complaints in these actions seek equitable relief as the result of alleged bad faith on the part of International President Maloney in illegally and improperly imposing a trusteeship upon Local No. 542, suspending the Local's officers and assuming complete control

over the assets and management of the Local Union. A complete factual statement may be found in Underwood v. Delaney and Wharton, C. A. No. 2052, and Dawson v. Delaney and Wharton, C. A. No. 2053, D.C., 170 F.Supp. 21. In C. A. No. 2052, the defendant's motion to dismiss was sustained upon the ground of improper venue. An amended complaint has been filed dropping Delaney and Wharton as defendants and substituting as defendant Raymond McBride as Representative of the International Union of Operating Engineers. It is asserted therein that McBride is a Delaware resident.

In C. A. No. 2053, the defendants' motion to dismiss was also sustained upon the ground of improper venue. An amended complaint has now been filed dropping all non-Delaware residents as plaintiffs.

The defendants have again filed motions to dismiss in each action. In C. A. No. 2052, the motion is based upon improper venue and lack of diversity, and in C. A. No. 2053, for lack of proper service.

While the issues are not common, the two cases are so closely related as to justify their joint disposition in a single opinion.

### The Underwood Case—C. A. No. 2052

In order for Underwood, a Pennsylvania resident, to establish a proper diversity and venue in this District, it was necessary for him to name as defendant a resident of the State of Delaware. 28 U.S.C. § 1391(a). If McBride, then, is a resident of Pennsylvania, as defendants assert, their motion to dismiss is well-founded. The plaintiffs argue that McBride's residence is in Delaware relying upon (a) the fact that he was born and lived in this State until 1936, (b) that he spends a great deal of the time here on work connected with his union activities and that while here he lives at the home of his mother-in-law in Smyrna, (c) that his business card shows his Smyrna address and telephone number and (d) an affidavit given in the Pennsylvania proceeding alleges that he is a Delaware resident.

Such circumstances, without more, might well be deemed sufficient to establish Delaware as McBride's residence. But there are a number of other factors which point to the opposite conclusion. Though born in Delaware, McBride (a) moved to Pennsylvania in 1936, (b) has rented or owned a home there ever since, (c) physically lived there with his family until 1958, the date of his appointment as Supervisor in Delaware, (d) returns to his home frequently over week ends and also spends some time each week at International headquarters in Philadelphia, (e) has a Pennsylvania license on his car and holds a Pennsylvania driver's license, (f) has both his bank accounts in Pennsylvania, (g) pays taxes in Pennsylvania, (h) attends church in Pennsylvania on those Sundays when in that State, (i) belongs to a club or lodge in that State and (j) votes in Pennsylvania.

These considerations, in my judgment, outweigh the factors indicating a Delaware residence. Undoubtedly, his Delaware domicile, and residence for that matter, shifted to Pennsylvania in 1936. There is no evidence to suggest a change in domicile and little to indicate a return of his residence to Delaware when he took up his duties here in 1958. Most of the considerations pointing to a Delaware residence are explained away because of his job. Since a good deal of his time must be spent here, it is natural that he should stay here and rent or use a room at his mother-in-law's home. The comparatively short distance between Smyrna and his home in Pennsylvania, less than 70 miles, permits him to return home frequently and easily. His telephone, partly paid for by International, is necessitated by his job. So is his business card. His affidavit given in the prior proceeding is not so easily explained. It may be noted, however, that the affidavit was not prepared by him and that in the minds of laymen, a person may live or reside where he sleeps and eats if it be for any substantial period of time—for instance, at the shore

in a summer cottage, or a month in a hotel while away on business. While I do not feel that McBride is estopped to deny his Delaware residence, nevertheless, two such conflicting statements under oath in the same litigation necessarily affect the credibility of the affiant and would inevitably cause a Court to scrutinize not only this but all future testimony given in the proceeding with some care.

It is my conclusion that McBride is not a resident of Delaware within the meaning of 28 U.S.C. § 1391(a) and, further, there being no diversity of citizenship, defendant's motion will be granted.

### The Dawson Case—C. A. No. 2053

In this action, McBride was served as the agent of Delaney and Wharton individually and as representatives of the International Union of Operating Engineers. The defendants move to dismiss upon the ground that McBride was not an agent upon whom service could validly be made. This motion is not well-founded for the following reasons.

In 1952, Maloney, Delaney's predecessor, then President of International, took over the affairs, business and assets of Local No. 542, lock, stock and barrel. Whether or not he had the right so to do, it was a comprehensive arrogation of power. The business of Local No. 542 was acting as bargaining agent for the International throughout one-half of Pennsylvania and all of Delaware. When Maloney assumed control over Local No. 542, he directed that:

> "In accordance with the power invested in me as General President by the Constitution of the International Union of Operating Engineers, *I hereby place Local Union No. 542, its branches, officers, members, business and affairs* under International supervision effective forthwith * * *." (My emphasis.)

This supervisory order was effected by the appointment of Wharton, Maloney's deputy:

> "I further appoint Brother Hunter Wharton as my deputy and International Supervisor over Local Union No. 542 and its branches and *I direct him to administer the business and affairs* thereof." (My emphasis.)

Since the affairs and business of the Local had to be carried on by someone because the officers of the Union were in effect removed, Maloney further directed Wharton to:

> " * * * appoint, *subject to my approval,* such temporary assistants and officers pro tem as may be necessary for the conduct of the business of the Local." (My emphasis.)

The officers of Local No. 542 were in effect removed and all its assets, bank accounts, etc., taken over:

> " * * * The present officers of Local Union No. 542 are instructed not to interfere in the administration of the business of the Local No. 542 by Supervisor Wharton and are further instructed to turn over to the Local Union any property belonging to it which they are withholding.

> "I direct that all Banks and Depositories of Local Union No. 542, its Branches, officers and committees, give full recognition to my deputy, Hunter Wharton, as International Supervisor in the premises and to honor the official character of his appointment."

Since the date of this order in August 1952, at least 28 collective bargaining agreements have been carried out in this State alone and ten of these agreements having been consummated in 1958, the year McBride was appointed, it is reasonable to believe that he may have participated in the negotiations leading up to some of them. And whether he did or not, he has been otherwise active in Delaware in what he chooses to call Local No. 542 affairs. However, in a case such as this it is fruitless to attempt to maintain that

Local No. 542 is a separate entity [1] and that McBride is not the agent of the Trustees. Delaney and Wharton have been doing business steadily in Delaware since 1952. As far as concerns this State, the business of Local No. 542 and that of Delaney and Wharton are the same. McBride was appointed by Lavery, one of Wharton's agents. His very pay checks are signed by Wharton as Supervisor or Trustee of Local No. 542. Ostensibly, he has represented Local No. 542 and been paid by that Local. But this is a mere fiction. Clearly, he is an agent of and paid by Delaney and Wharton, the Trustees of Local No. 542. He is no mere clerk but a supervising agent whose work is coextensive with the work of International and Delaney and Wharton in this State. Under such facts, it comes with poor grace for the defendants to argue that because McBride was not directly appointed by Delaney (Maloney's successor) or by Wharton, that he is not their agent. Lavery, a Wharton appointed agent, appointed McBride and since (1) International and/or the individual defendants could only carry out its business in Delaware through agents and (2) since his agency was acquiesced in for some year and a half after his appointment by Lavery, we may safely assume that he is in law an agent of Delaney and Wharton, the Trustees of Local No. 542.

Under F.R.Civ.P. 4(d) (1) and 4(d) (7), 28 U.S.C., service of process may be made upon (a) individuals by " * * * delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process", or (b) as prescribed by any statute of " * * * the state in which service is made." Sec. 3104, Title 10, Del.Code provides that service may be made upon any agent of a person " * * not residing in this State but doing business therein either by a branch establishment or agency * * *." [2]

 Under Rule 4(d) (7), the test of a valid service is whether, from the surrounding facts, it is reasonable to infer that the service will be brought home to the Union or to the principal. Claycraft Co. v. United Mine Workers of America, 6 Cir., 1953, 204 F.2d 600. Tunstall v. Brotherhood of Locomotive Firemen and Engineers, supra. Operative Plasterers' and Cement Finishers' International Ass'n of the United States and Canada v. Case, 1937, 68 App.D.C. 43, 93 F.2d 56. I have no hesitancy in holding that McBride was an agent of Delaney and Wharton and that his relation to them was such as reasonably to conclude that he would give notice of suit to his principals.

Defendants' motion is denied.

---

1. Even if it were, one Circuit Court has indicated that service upon it would bind International. Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 4 Cir., 148 F.2d 403.

2. Were it necessary, I would also conclude, despite defendants' argument about the unconstitutionality of Sec. 3104 of the Delaware Code, that service was valid under that section.