Eleanor P. MARCHWINSKI and Margaret A. Samson, on behalf of themselves and on behalf of all other persons similarly situated, Plaintiffs,

v.

OLIVER TYRONE CORPORATION, Oliver Realty, Inc., Pittsburgh Buildings Association, on behalf of themselves and Oliver Tyrone Corporation on behalf of all other persons similarly situated, and Building Service Employees' International Union, AFL–CIO, Pittsburgh Local # 29, Defendants.

Civ. A. No. 76–72.

United States District Court,
W. D. Pennsylvania.

Nov. 9, 1978.

Roslyn M. Litman, Howard A. Specter, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiff.

Robert W. Hartland, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Oliver Realty & Pittsburgh Realty Assoc.

Herman L. Foreman, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa., for Local # 29.

Judd N. Poffinberger, Thomas R. Johnson, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Oliver Tyrone Corp.

### OPINION

COHILL, District Judge.

#### History of the Case

This action was brought by two named-plaintiffs, Eleanor P. Marchwinski and Margaret A. Samson, cleaning personnel at Oliver Plaza in Pittsburgh, as a class action under Fed.R.Civ.P. 23(b)(2) against the Oliver Tyrone Corporation ("Oliver Tyrone"), Oliver Realty, Inc. ("Oliver Realty"), the Pittsburgh Building Association ("P.B.A.") and Building Service Employees' International Union, AFL–CIO, Pittsburgh Local # 29 ("Local # 29" or the "Union"). Oliver Tyrone and Oliver Realty are closely related, the latter having been a wholly-owned subsidary of the former at the time this suit was instituted. P.B.A. is an unincorporated association which, according to the allegations of the complaint, acts as the agent of various owners, operators, or managers of office buildings in Pittsburgh for the purpose of negotiating labor agreements with the Union; the plaintiffs' complaint lists over fifty buildings allegedly involved. Defendant Local # 29 is a labor union to which the representative plaintiffs, and those they claim to represent, belong.

The named plaintiffs filed sex discrimination charges against Oliver Realty, Oliver Tyrone, and Local # 29 with the Equal Employment Opportunities Commission ("EEOC") in 1973 and 1974 and subsequently received "right to sue" notices.

In their complaint, plaintiffs set out five separate causes of action in five counts:

Count 1 alleges sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This count alleges that "[s]ince July 2, 1965, and for years prior thereto, defendants Oliver Tyrone, Oliver Realty and Union have individually and in concert enacted and effected employment policies and procedures of discrimination against females."

Count 2 alleges that the defendants combined and conspired to deprive plaintiffs of equal employment opportunities in violation of the Civil Rights Act of 1861, 42 U.S.C. § 1985(3), and in violation of the Fifth and Fourteenth Amendments of the Constitution.

Count 3 alleges that the defendants unlawfully agreed, combined, and conspired "to boycott women and to prevent women from obtaining higher paying jobs" and to otherwise restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and § 4 of the Clayton Act, 15 U.S.C. § 15.

Count 4 alleges that the Union "has breached its duty of fair representation to . . . Plaintiffs. [It] has not properly processed grievances . . . and has not, in general, adequately represented Plaintiff class in day-to-day labor relations with management and contract negotiations" in violation of the Labor Management and Relations Act, 29 U.S.C. § 141 *et seq.*

Count 5 is a pendent state claim, alleging that the defendants have paid females lower wages than males, in violation of the Pennsylvania Equal Pay Act, 43 P.S. § 336.1 *et seq.*

### Summary of Motions to be Decided

Each of the counts has come under attack by one or more of the defendants by way of Motions to Dismiss under Fed.R.Civ.P. 12(b). Oliver Tyrone and Oliver Realty have jointly moved to dismiss Counts 2, 4 and 5 as to them for failure of plaintiffs to state causes of action upon which relief can be granted.

They have three objections to Count 2: (1) no cause of action is stated under the Fifth or Fourteenth Amendments since neither of these protects rights to be free from discrimination in private employment; (2) § 1985(3) is not applicable to claims of sex discrimination; and (3) plaintiffs' complaint does not sufficiently allege a conspiracy under § 1985(3).

As to Count 4, Oliver Tyrone and Oliver Realty assert that the Labor Management Relations Act of 1947 is not applicable to the non-union defendants.

As to Count 5, Oliver Tyrone and Oliver Realty claim that the Pennsylvania Equal Pay Act exempts persons covered by the Fair Labor Standards Act, such as plaintiffs herein.

Finally, they have moved to dismiss all claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 as inconsistent with the statutory scheme of Title VII. Defendants Oliver Tyrone and Oliver Realty make no response at this time to the Title VII and antitrust claims against them.

Defendant P.B.A. has joined in all the substantive attacks by Oliver Tyrone and Oliver Realty. Specifically as to it, P.B.A. objects to its inclusion in the Title VII charge on two grounds: (1) that it is not an "employer" under Title VII, and (2) that it was not named or included in the EEOC proceedings. Moreover, P.B.A. has moved to dismiss all of the counts against it for lack of personal jurisdiction, claiming it was not properly served under federal or state procedural rules.

Local # 29 has moved to dismiss Counts 1, 2, 4 and 5 as to it. As to Count 1, Local # 29 submits that this court has no subject matter jurisdiction over it under Title VII because administrative remedies were inadequately followed.

Local # 29 attacks Count 2 for failure to state a claim, contending that: (1) plaintiffs' allegations of fact are insufficient to state a claim under § 1985(3); (2) the conspiracy alleged is not covered by § 1985(3); and (3) neither the Fifth nor Fourteenth amendments create any right in individuals to equal employment opportunity in private employment.

Local # 29 has moved to dismiss Count 4, the Labor Management Relations Act charge, for lack of jurisdiction under § 301, and Count 5, the Pennsylvania Equal Pay Act claim, claiming it excludes employees subject to the federal Fair Labor Standards Act. Further, as do the Oliver defendants, it moves to dismiss any claims for declaratory relief pursuant to 28 U.S.C.A. §§ 2201 and 2202 as inconsistent with the statutory scheme of Title VII. It makes no response at this time to plaintiffs' antitrust claims in Count 3.

After considering whether P.B.A. is properly before this court, we will deal with the remaining motions to dismiss count by count and party by party.

### I.

### Personal Jurisdiction Over Pittsburgh Buildings Association

In their complaint, plaintiffs describe P.B.A. as "an unincorporated association

that acts as the agent of various owners, agents, operators, or managers of office buildings in the City of Pittsburgh in negotiating labor agreements with Union." According to U.S. Marshal's Receipts filed with this Court, the plaintiffs twice attempted service of process on defendant P.B.A. On January 16, 1976, at the plaintiffs' direction, service on P.B.A. was attempted at the Oliver Tyrone headquarters at One Oliver Plaza in Pittsburgh; this is the same place where service was made on defendant Oliver Tyrone on that date. A second attempt to serve P.B.A. was made on March 24, 1976, by directing notice to one Michael R. Chase at 1900 Grant Building in Pittsburgh. Service on March 24 was actually made on Gerry Doyle, a secretary at 1900 Grant Building. Both Mr. Chase and Miss Doyle have submitted affidavits to the effect that neither has ever been an officer or agent of P.B.A. nor had P.B.A. regularly conducted business or association activities at that address. An Oliver Tyrone official submitted a similar affidavit as to the Oliver Plaza address. Plaintiffs, not reaching the question of the second attempted service, assert in their brief in opposition to defendants' motions to dismiss, that service was effected upon P.B.A. by service on its "member-agent," the Oliver Tyrone Corporation, on January 16, 1976. If P.B.A. has no officers or hierarchy (as defendants have asserted in their briefs), plaintiffs argue that failure of the court to recognize service on a member as service on the association would leave P.B.A. "impervious to suit and theoretically free from liability for its wrongful conduct." Defendants respond that those actually served were not agents of P.B.A., and that there is no legal support for the proposition that a member of an association is an agent where there are no official or appointed agents.

■■■ Personal service on unincorporated associations is covered in Fed.R.Civ.P. 4(d) which, *inter alia*, provides:

(d) SUMMONS: PERSONAL SERVICE

. . .

Service shall be made as follows:

. . . . .

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent authorized by appointment or by law to receive service of process . . .

. . . . .

(7) Upon a defendant of any class referred to in paragraph (1) or (3) . . . it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held . . .

These are alternate provisions, and defendant P.B.A. would have been properly served if plaintiffs had met the requirements of Fed.R.Civ.P. 4(d)(3) or of Pennsylvania law. We first look to the federal rule. Under subdivision (3), service may be made by delivering the complaint to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Service was clearly not made on an officer or any type of official or appointed agent; the question under Rule 4(d)(3) then is whether a member of an unincorporated association is an agent as a matter of law for the receipt of service of process. We know of no federal or state statute which makes a member of an unincorporated association an agent of such association for purposes of receipt of service of process. We cannot imply an agency under the law where there is no case precedent or compelling logic requiring us to do so. Plaintiffs argue that if a member cannot be served, the association cannot be sued. This is logical, but not syllogistic: it does not follow that therefore anyone may be served even if procedural requirements are not met. Plaintiffs remind us that the reason for the rules is to insure adequate notice to the defendant and suggest that one test of adequacy is the reasonable expectation that the individual served will

notify the entity of the commencement of the suit. Another statement of the test is whether the service would be "brought home" to the principal, *Underwood v. McBride*, 182 F.Supp. 361 (D.Del.1960). We believe the Supreme Court standard to be whether service is "reasonably calculated" to reach the defendant, thus placing the burden properly on the plaintiffs. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Eisen v. Carlisle*, 417 U.S. 156, 174–75, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In a situation where the defendant is an unincorporated association formed for limited purposes, with a membership of the managements of over fifty buildings, service on any one of the members, without more, cannot reasonably be expected to reach the association as a whole, nor can we say that such service is reasonably calculated to do so. It may be that news of the summons and complaint would spread among some of the building-members; however, due process requirements cannot be met by notice through hearsay or rumor. Some more direct nexus between service and notice is required. It is true that a case in this district has held that members of a joint venture are its agents for the service of process, *Stuart v. Al Johnson Constr. Co.*, 236 F.Supp. 126 (W.D.Pa.1964); however, we find that the members of an unincorporated association such as this one lack the close connection that would make members of a joint venture more reasonably calculated to "bring home" the notice that is constitutionally required. We find that both the first attempted service of P.B.A. by service on Oliver Tyrone and the later attempted service on employees in the Grant Building were insufficient under Fed.R.Civ.P. 4(d)(3) to invoke the jurisdiction of this Court.

Although plaintiffs did not meet the requirements of Fed.R.Civ.P. 4(d)(3), they alternately could have properly served the defendant P.B.A. under 4(d)(7) by complying with Pennsylvania procedure for service of process. Pa.R.Civ.P. 2157(a)[1] provides:

> Service of process upon an officer or a registered agent of an association, or upon the manager, clerk or other person for the time being in charge of any place where such association regularly conducts any business or association activity shall be deemed service upon the association
>
> . . .

The affidavits submitted by defendants establish that neither of those served were officers or agents of the association and that P.B.A. did not regularly conduct any business or activities at the locations where service was attempted. The same due process requirements apply under Pennsylvania procedure as under the federal rules. In *Giordani v. Hoffman*, 295 F.Supp. 463, 469 (E.D.Pa.1969), Judge Masterson wrote that insuring that the defendant would receive actual notice was "the relevant policy interest" underlying the federal and Pennsylvania rules for service of process. *See also Goldlawr, Inc. v. Shubert*, 169 F.Supp. 677 (E.D.Pa.1958), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Therefore, for the same reasons discussed above relative to Fed.R.Civ.P. 4(d)(3), the plaintiffs failed to properly serve the defendant P.B.A. under Pa.R.Civ.P. 2157. No proper service having been made, this Court is without personal jurisdiction over P.B.A. and all counts against P.B.A. must be dismissed.

## II.

### Count One—Title VII Claims

Having concluded that P.B.A. is not properly before us, we need not reach its contentions that it is not an employer under Title VII or that it was not properly named in administrative proceedings prior to suit.

1. Rule 2180 provides for service upon "a corporation or similar entity," and includes a provision for service upon the Secretary of the Commonwealth where other measures fail. However, we do not believe that Rule 2180 contemplates such a loosely-organized unincorporated association as the P.B.A. in its "corporation or similar entity" language. At any rate Rule 2180 has not been complied with by plaintiffs.

Local # 29 moves to dismiss Count 1 for lack of subject matter jurisdiction in this court, claiming that (1) the EEOC failed to attempt to conciliate this matter as required by 42 U.S.C. § 2000e–5(d), and (2) the Union had not been properly notified since the Union had been advised that plaintiff Margaret A. Samson had withdrawn her EEOC complaint some time after filing it. However, Local # 29 has submitted no affidavits in support of its claims. We find no legal merit to the defendant's contention that this court is without subject matter jurisdiction if the EEOC fails to attempt to conciliate an administrative complaint. A long line of cases has established that a complainant who properly files his charge with the EEOC cannot be denied access to federal court because of the inaction or failings of administrative agencies. *See, e. g., Fekete v. United States Steel Corp.*, 424 F.2d 331, 336 (3d Cir. 1970) ("We do not require an affirmative finding by the Commission as the passport for judicial review"); *Beverly v. Lone Star Lead Const. Corp.*, 437 F.2d 1136, 1140 (5th Cir. 1971) (statutory right to federal suit is not "subject to such fortuitous variables as workload, mistakes, or possible lack of diligence of EEOC personnel"); *Dent v. St. Louis—San Francisco Ry Co.*, 406 F.2d 399, 401 (5th Cir. 1969) (an attempt at conciliation by the EEOC is not a jurisdictional prerequisite to suit); *Johnson v. Seaboard Air Line R. R.*, 405 F.2d 645, 648 (4th Cir. 1968) (Title VII imposes a duty on the EEOC but does not preclude suit when an attempt to conciliate "fails to materialize"). The weight of the authority is so strongly against the Union's contention here that we could not seriously consider the facts of the EEOC conciliation attempt even if those facts were before us. So long as the plaintiffs have properly and timely filed their administrative charges and received "right to sue" notices, they have satisfied their obligation under 42 U.S.C. § 2000e–5(d).

Local # 29 further asserts that it had been notified that plaintiff Margaret A. Samson had withdrawn her complaint before the EEOC. We have not received affidavits on this matter from the defendant Union. Absent supporting affidavits on behalf of Local # 29's factual claims, we will accept the plaintiff's allegations as uncontroverted at this time. 2A Moore's Federal Practice §§ 12.08, 12.14; *A. T. Brod & Co. v. Perlow*, 373 F.2d 393, 397–98 (2d Cir. 1967). On this basis we must deny Local # 29's motion to dismiss the Title VII charges against the Union for lack of subject matter jurisdiction. Of course, the defense of lack of subject matter jurisdiction may be made at any time, *Louisville & Nashville Ry. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), and the defendant may raise its factual contentions at such time as proof is available.

We further note that there has been no challenge to the exhaustion of administrative remedies alleged by plaintiff Marchwinski; it appears, therefore, that Local # 29 seeks dismissal of the Title VII claim in part only. Defendant will have an opportunity to question the appropriateness of the representative plaintiffs, and this Court will rule on their representative status in class action determinations under Rule 23 to follow this opinion.

### III.

*Count Two—Claims under 42 U.S.C. § 1985(3) and the Constitution*

Defendants, Oliver Tyrone, Oliver Realty, and Local # 29 all move to dismiss the Count 2 claims under 42 U.S.C. § 1985(3) and under the Fifth and Fourteenth Amendments to the United States Constitution for failure to state claims upon which relief can be granted. Since their arguments are similar, and since the dispositions made on each claim affect all of them equally at this point, we will consider all of the defendants' contentions jointly.

In their complaint the plaintiffs allege that the defendants conspired to deprive them of equal employment opportunities in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), and also in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Because we find the Fifth and Fourteenth Amendments clearly inapplicable here, we will consider them first.

The purpose of the Fifth Amendment to the Constitution was to limit the power of the legislature and other officers of the United States Government. *Ex parte Wilson,* 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885). While it protects individuals against arbitrary action of the government, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), it provides no protection against private action. *Bryant v. Jefferson Federal Sav. & Loan Assn.,* 166 U.S.App.D.C. 178, 509 F.2d 511 (1974). Likewise, the Fourteenth Amendment is a restraint upon state governments, *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); it "erects no shield against merely private conduct, however discriminatory or wrongful," *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Since the plaintiffs have made no allegations of state or federal conduct involved in the alleged discrimination that is the subject of this suit, all claims under the Fifth and Fourteenth Amendments must be dismissed.

■ The defendants move to dismiss the plaintiffs' claims under the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), on two grounds: (1) that § 1985(3) does not apply to claims of sex discrimination in private employment, and (2) that the plaintiffs' complaint insufficiently alleges a conspiracy cause of action under § 1985(3).

The question of whether sex discrimination is included within the categories of class animus prohibited by § 1985(3)—a question of current controversy—has recently been answered for us by the Third Circuit Court of Appeals. In *Novotny v. Great American Federal Savings and Loan Assn.,* 584 F.2d 1235, 1243–1244 (3d Cir. 1978) (en banc), Judge Adams wrote for the court en banc:

. . . The fact that a person bears no responsibility for gender, combined with the pervasive discrimination practiced against women, and the emerging rejection of sexual stereotyping as incompati-ble with our ideals of equality convince us that whatever the outer boundaries of the concept, an animus directed against women includes the elements of a 'class-based invidiously discriminatory' motivation.

We therefore join the two circuits that have included sex discrimination within the categories of animus condemned by § 1985(3). (footnotes omitted)

Therefore, we must deny the motion to dismiss the § 1985(3) claim on the ground that the statute is inappropriate to sex discrimination claims.

■ Defendants also have moved to dismiss the § 1985(3) claim for failure to state a cause of action since "Plaintiffs' bare and conclusory allegations of conspiracy are insufficient, as a matter of law." The plaintiffs of course respond that the allegations in their complaint are sufficient, and both sides recite some of the same language in the complaint in support of their contentions. In such a controversy, we are instructed by the Supreme Court:

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The issue before us, then, is whether the plaintiffs have sufficiently alleged a conspiracy under 42 U.S.C. § 1985(3) to entitle them to offer evidence to prove their allegations. The defendant correctly states the rule in the Third Circuit to be that conspiracy allegations must be supported by specific facts, and that broad, conclusory allegations are insufficient. *Robinson v. McCorkle,* 462 F.2d 111 (3d Cir. 1972), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1973). We must therefore ask whether the plaintiffs have supported their allegations with sufficient and specific facts. In *Robinson v. McCorkle,* the Court of Appeals for the Third Circuit upheld a dismissal of a

§ 1985(3) claim on the basis of the pleadings, noting

. . . With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals. 462 F.2d at 113.

Although characterizing the conspiracy allegations as "unsupported by any specific facts," the court did not set out the allegations of the complaint for our comparison. However, the Third Circuit has since reviewed and distinguished the *Robinson* case in *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168 (3d Cir. 1978). Reversing a decision of this district court which defendants have cited in support of their position here, the Court of Appeals set out various sections of the complaint brought by a black carpenter against certain construction companies and unions representing construction workers. Among the allegations were claims that the defendants refused to hire the plaintiff into a certain job category because of his race, that defendants assigned blacks to the most undesirable jobs while reserving the more desirable jobs for whites, that defendants denied plaintiff overtime and promotions, and that defendant construction companies "conspir[ed] with the defendant labor organizations to discriminate against the plaintiff and other black persons." 570 F.2d at 1171. Referring to these allegations, the *Bethel* court described the complaint as "replete with specific allegations of race-based discrimination," 570 F.2d at 1173, and sufficient for purposes of stating a claim under § 1985(3). Reviewing the plaintiffs' complaint at paragraphs 22, 23, and 27, we find these sections similar to the sections approved in *Bethel*. In paragraph 23, the plaintiffs herein allege that the defendants "failed to recruit, hire, and employ women in higher and better paying, permanent jobs, in the same manner as males; by failing to equalize salary, compensation, training, overtime, benefits, terms and conditions of employment for women as con-

trasted with similarly situated male employees . . . ." In paragraph 22, the plaintiffs set out more specific facts in the form of common questions of fact for class action certification. The only difference we see between the allegations approved in *Bethel* and those presented here is that *Bethel's* allegations of conspiracy followed immediately after the facts and, therefore, were more a part of the specific factual allegations, whereas the plaintiffs here incorporate the factual allegations into a later count, then adding the allegation that the defendants "combined and conspired among themselves" to achieve the discrimination against females. We think this difference is without substance where the factual allegations are so similar. The *Bethel* allegations of conspiracy were simply that the defendant employers "conspir[ed] with the defendant labor organizations to discriminate against plaintiff and other black persons in employment practices" and that the labor organizations "conspir[ed] with the corporate defendants to deny full employment to plaintiff and other black persons." 570 F.2d at 1171. The conspiracy allegations of paragraph 27 of the complaint herein are at least as complete:

The [four defendants] have combined and conspired among themselves and the members of the Pittsburgh Buildings Association to deprive Plaintiff and other females similarly situated of protections and privileges of employment equal to those accorded to male employees because of an intent to discriminate against females. Defendants' aforementioned discrimination against females in employment opportunities has deprived Plaintiff and other females similarly situated of their rights under . . . 42 U.S.C. § 1985(3).

In *Bethel, supra,* the Third Circuit also referred to the test of sufficiency of a § 1985(3) claim established by the United States Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Under that standard, a complaint must allege that defendants:

did (1) 'conspire to go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.' 403 U.S. at 102–03, 91 S.Ct. at 1798.

Requirements 1, 2 and 4 are met by paragraph 27 of the plaintiffs' complaint alleging that defendants "combined and conspired among themselves" . . . "because of an intent to discriminate against females in employment opportunities" thus "depriv[ing] Plaintiff and other females similarly situated of their rights under . . 42 U.S.C. § 1985(3)." Requirement 3 is met by the factual allegations of paragraphs 22 and 23, discussed earlier.

■ Although the plaintiffs' complaint is presented in a confusing form, we have read it as a whole, accepting the allegations as true and construing the complaint in a light favorable to plaintiff, as we must on a motion to dismiss at this stage of the proceedings. *Bethel, supra,* at 1173; *Heltoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir. 1977). Finding that the plaintiffs' allegations are sufficient under the Supreme Court's test, *Griffin, supra,* and very close to the allegations recently upheld by the Third Circuit in *Bethel, supra,* we therefore deny the defendants' motions to dismiss the § 1985(3) claims against Oliver Realty, Oliver Tyrone, and Local # 29.

## IV.

### Count 4—The Labor Management Relations Act Charge

■ With some relief, we reach Count 4, the only count before us on which the plaintiffs and at least some of the defendants are in agreement. In the complaint, at paragraph 33, the plaintiffs allege that "[the] Union had breached its duty of fair representation to representative Plaintiffs and to members of Plaintiff" and pray for judgment against the Union in Plaintiffs' favor. Defendants, Oliver Tyrone and Oliver Realty, nonetheless move to dismiss this count as to them for failure to state a claim since the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, imposes a duty of fair representation only upon labor unions or labor organizations. They cite § 9(a) of the LMRA, which requires unions to be exclusive representatives of employees for collective bargaining purposes. We believe that the employer defendants were never intended to be included in this count, and the plaintiffs so concede. To avoid any confusion, however, we will grant the motion to dismiss Count 4 as to defendants Oliver Tyrone and Oliver Realty for failure to state a cause of action under the LMRA.

■ Defendant Local # 29 moves to dismiss Count 4 as to it for lack of subject matter jurisdiction. It contends that (1) this court has no subject matter jurisdiction under § 301 of the LMRA where plaintiffs have not alleged a breach of a collective bargaining agreement, and (2) the plaintiffs make no factual allegations that the Union refused or failed to process properly any grievances filed by the plaintiffs under the contract. The Union has not cited any authority nor submitted a brief in support of its contentions, nor has the plaintiff responded to this particular motion.

We have been unable to find any support in the statute, 29 U.S.C. § 141 *et seq.,* or in case precedent, for the Union's assertion that the plaintiffs must allege a breach of contract where their claim is based on failure adequately to represent the plaintiffs. On the contrary, the Supreme Court has held that failure to exhaust contractual remedies does not preclude an action in federal court for violation of fair representation. In *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), a case involving an action under § 301 of the LMRA, 29 U.S.C. § 185, for violation of a

collective bargaining agreement, Justice White wrote:

. . . [W]e think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.

We believe this logic applies with equal force in an action against the Union itself for failure to represent fairly its membership. A breach of the Union's duty relieves the employee of any "express or implied requirement that disputes be settled through contractual procedures . . ." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976).

 The Union further contends that the plaintiffs have not alleged that the Union refused or failed to properly process any grievances filed by the plaintiffs under the contract. Plaintiffs' complaint, Count 4, after incorporating earlier paragraphs, reads:

By reason of the foregoing, since 1963, and for years prior thereto, Union has breached its duty of fair representation to the representative Plaintiffs and to members of Plaintiff. Union has not properly processed grievances filed by members of Plaintiff class and has not, in general, adequately represented members of Plaintiff class in day-to-day labor relations with management and contract negotiations.

On a motion to dismiss a § 301 claim, we need not find evidence of plaintiffs' claims but only allegations, which, if proven, would constitute conduct violative of the Union's statutory duty. *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961, 966 (6th Cir. 1976). Evidence required at trial would have to establish Union conduct which was—in the language of the Supreme Court—"arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra*, 386 U.S. at 190–93, 87 S.Ct. at 916. If the

allegations of the plaintiffs, that the Union has not properly processed grievances based on the sex of the union member, were proved, such conduct would meet the Supreme Court test.

For these reasons we deny Local # 29's motion to dismiss Count 4 as to it.

### V.

### *Count Five—The Pennsylvania Equal Pay Act Claim*

 The plaintiffs' complaint at Count 5 alleges that "Defendant and Union have caused to be paid and have paid female 'light cleaners' less wages than male 'heavy cleaners,' notwithstanding the fact that the duties of a light cleaner are equal to the duties of a heavy cleaner," thus violating the Pennsylvania Equal Pay Act, 43 P.S. §§ 336.1 *et seq.*

Defendants have moved to dismiss this count for failure to state a claim upon which relief can be granted. They cite the exclusion from the Pennsylvania act of persons subject to the federal Fair Labor Standards Act, 29 U.S.C. § 206(d)(1), and assert that the plaintiffs herein come under the federal act. Plaintiffs respond that there are no facts on the record from which the Court can conclude that the federal act is applicable and the state act therefore precluded.

As the defendants point out, the plaintiffs themselves have alleged in their complaint at paragraph 9 that they are employed "in an industry affecting commerce." Although that contention, if true, makes it unlikely that the Pennsylvania act would apply, we need not and do not reach the substance of this claim.

Count 5, grounded in a state statute, is a pendent claim which is before us only insofar as this district court, in its discretion, allows it to be "appended" to valid federal claims. The classic tests of the power of a federal court to hear an independent state claim are whether the state and federal claims "derive from a common nucleus of operative fact" and are such that the plaintiffs "would ordinarily be expected to try

them all in one judicial proceeding," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). If those tests are met, "there is *power* in federal courts to hear the whole," *Gibbs, supra*, at 725, 86 S.Ct. at 1138 (emphasis in original); thus, the court may, but need not, consider the state claim. As the *Gibbs* court went on to say:

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided . . . Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial. If so, jurisdiction should ordinarily be refused. 383 U.S. at 726–27, 86 S.Ct. at 1139 (citations omitted).

In *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Supreme Court upheld a California district court's refusal to hear state claims against a county in conjunction with a federal § 1983 claim. There the exercise of pendent jurisdiction would have required bringing in a new or "pendent" party, would have necessitated resolution of difficult questions of state law, and might have resulted in an overly complicated case at trial, 411 U.S. 611–613, 93 S.Ct. 1785. We recognize that there has been a general trend toward including closely-related state claims in federal suits. *See, e. g., Gagliardi v. Flint*, 564 F.2d 112, 114 (3d Cir. 1977) (a federal court may and "usually should" hear pendent non-constitutional claims where by so doing it can avoid deciding constitutional questions). On the other hand, this trend has been properly limited by decisions which, in effect, tell the courts

to use common sense in exercising their discretion. *See, Price v. Franklin Investment Company*, 187 U.S.App.D.C. 383, 391, 574 F.2d 594, 607 (1978) (district court dismissal approved where retention of pendent claims would have made the case "virtually unmanageable for the courts and the parties"); *cf. Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976) (district court's exercise of pendent jurisdiction over state claims after the dismissal of federal claims unjustified despite the fact that economy, convenience, and fairness favored retention); *Mahone v. Waddle*, 564 F.2d 1018, 1026 (3d Cir. 1977) (Circuit Court would not affirmatively order a district court to exercise pendent jurisdiction despite precedent in the particular area of law favoring that course).

In this case there are factors favoring and other factors militating against the exercise of pendent jurisdiction. Plaintiffs' claim of discrimination in pay between men and women certainly arises out of a common nucleus with their other claims. It is the type of claim which might normally be litigated along with a sex discrimination claim.

On the other hand, it is not clear that judicial economy and fairness would be served by inclusion of this claim in the particular federal suit before us. Defendants contend that plaintiffs are not properly within the coverage of the Pennsylvania Equal Pay Act since that act, as amended in 1968, 43 P.S. § 336.2(a), specifically excludes persons subject to the federal Fair Labor Standards Act. Preliminary research on the amendment to the Pennsylvania act has uncovered no state court cases construing this amendment. We have found two federal court cases that have dismissed claims under the Pennsylvania act where the plaintiffs had in the same suit expressly claimed causes of action under the federal Fair Labor Standards Act: *Cap v. Lehigh University*, 433 F.Supp. 1275 (E.D.Pa.1977); *Bradford v. Peoples Natural Gas Co., Inc.*, 60 F.R.D. 432 (W.D.Pa.1973). In our case, were we to accept jurisdiction, we would be called upon to resolve a different ques-

tion—whether the Pennsylvania Equal Pay Act may be applied in a case where the plaintiffs had not invoked the federal statute. Although this is an area involving federal-state relationships, we hesitate to adjudicate a claim brought solely under the state statute without any guidance from the state courts in construing the state statute. Further, we have before us a complaint asserting four federal causes of action under five federal statutory schemes not especially known for their well-settled status in the law—Title VII, § 1985(3) of the Civil Rights statutes, the Labor Management Relations Act, and the Sherman and Clayton Antitrust Acts. The inclusion of the antitrust claims along with the labor and civil rights claims already presents an unusual, and complicated, package for trial. Damages, injunction, and declaratory relief are sought. Additionally, the plaintiffs have brought their action as a class action and assert that defendants be considered as a class.

This is not the type of case wherein the state claims so predominate over federal claims that were we to accept jurisdiction, we would allow "the tail to wag the dog"; on the contrary, the federal claims promise to be so large and complicated that we feel the creature would be more manageable without its tail. This is just the type of case the Supreme Court may have been unable to foresee specifically when it warned in general terms in *Gibbs* "[t]here may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims . . . ." 383 U.S. at 727, 86 S.Ct. at 1139.

For the reasons that there is no clear precedent under state law construing the Pennsylvania Equal Pay Act as it would be applied in this case and that inclusion of this claim would unduly complicate this case, Count 5 will be dismissed as to all remaining parties.

We make no decision on the merits of this claim and plaintiffs may pursue it in the state courts where a construction of the 1968 amendment to the Equal Pay Act in this type of case could more appropriately be made.

### IV.

#### Claims for Declaratory Relief

Defendants move to dismiss plaintiffs' claim for declaratory relief as inappropriate to a Title VII action where the statutory scheme itself provides adequate remedies. While we agree with the defendants' position that courts should normally refrain from granting declaratory relief where a comprehensive statutory scheme of remedies is provided for a specific type of claim, *Katzenbach v. McClung*, 379 U.S. 290, 85 S.Ct. 11, 13 L.Ed.2d 20 (1964) (Title IV claim), it does not follow that declaratory relief is precluded in this case. Defendants have not asserted that declaratory relief is inappropriate to any of the plaintiffs' other claims, and under Rule 57 of the Federal Rules of Civil Procedure, federal courts have broad discretion in fashioning declaratory relief "where it is appropriate." And even though Title VII provides the kind of comprehensive remedial scheme that would usually make declaratory relief unnecessary, that in itself does not absolutely preclude the use of a declaratory judgment. *See*, C. Wright & A. Miller, Federal Practice and Procedure, § 2758, and cases cited therein.

Since it would be premature in this type of case to predict what remedies will become appropriate, especially considering the number and type of federal statutes involved, and the potential class-action status of this suit, the defendants' motion to dismiss the claim for declaratory relief will be denied.

#### Conclusion

Our order will provide that:

a. All claims are dismissed as to defendant Pittsburgh Buildings Association for lack of personal jurisdiction.

b. Plaintiffs' Fifth and Fourteenth Amendment claims are dismissed for failure to state claims upon which relief could be granted.

c. The Labor Management Relations Act count is dismissed as to the non-union defendants.

d. The pendent state claim under the Pennsylvania Equal Pay Act is dismissed as to all parties.

e. Local # 29's motions to dismiss the Title VII and Labor Management Relations Act counts as to it for lack of subject matter jurisdiction are both denied.

f. The motions of Oliver Realty, Oliver Tyrone, and Local # 29 to dismiss the Civil Rights Act count under 42 U.S.C. § 1985(3) are denied.

g. The motions of these three parties to dismiss the plaintiffs' claims for declaratory relief are also denied.

An appropriate order will be entered.